### SEABURY *v.* DETROIT UNITED RAILWAY.

1. EVIDENCE—MORTALITY TABLES—PRESENT WORTH.

Where plaintiff's expectancy, in a personal injury case, was shown by the mortality tables to be 26 years, it was not error to refuse to strike out testimony given by plaintiff's counsel that the present worth of one dollar to be paid each year for 26 years would be $16.37.

2. DAMAGES—MEASURE OF DAMAGES—VALUE OF LABOR AND SERVICES—MARKET VALUE.

The true measure of plaintiff's damages, in a personal injury case, for labor and services which he had been able to perform before the injury, and which, because of the injury, he was unable to perform thereafter, would be the value in the open market of such labor and services.[1]

3. SAME—EXPECTANCY—PRESENT WORTH—METHOD OF COMPUTATION —INSTRUCTIONS.

Where the trial court properly instructed the jury as to the method of finding the present worth of any sum of money, and further instructed them that in using the mortality tables they were to take into consideration the fact that plaintiff might not live out his expectancy, that he might be sick some of the time, and not able to work all the while, the charge was within the rule approved by this court in *Little* v. *Bousfield & Co.,* 165 Mich. 654 (131 N. W. 63).[2]

---

[1] Admissibility, on question of damages for personal injuries, of amount paid for services of substitute during incapacity, see note in 30 L. R. A. (N. S.) 737.

[2] On conclusiveness and effect of tables of expectancy of life, in action for personal injuries, see note in 40 L. R. A. 560.

4. TRIAL—ARGUMENT OF COUNSEL.

 It was improper for plaintiff's counsel, in his argument to the jury, in a personal injury case, to refer to the fact that, under the decision of the Supreme Court, he was not at liberty to ask them what they would take to be changed from their present condition to one like plaintiff.

5. SAME — ARGUMENT OF COUNSEL — CREDIBILITY OF WITNESSES — CURING ERROR.

 Remarks by plaintiff's counsel, in his closing argument to the jury, that in all his experience in 40 years in trying personal injury cases for the railroad company he had never known a single instance where the conductor and brakeman admitted that they had been at fault, if an injury occurred because of their negligence, and the trial court, at the time the remarks were made, definitely refused to rule upon defendant's objection thereto, were highly prejudicial, and in view of the sharp conflict in the testimony, the effect upon the minds of the jury was not removed by the court's tardy and apologetic treatment of the incident on the following day, in his charge to the jury.

Error to Lapeer; George W. Smith, J., presiding. Submitted October 3, 1916. (Docket No. 17.) Decided December 22, 1916.

Case by John Seabury against the Detroit United Railway for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*Corliss, Leete & Moody (Benj. F. Reed,* of counsel), for appellant.

*Theo. D. Halpin,* for appellee.

BROOKE, J. Plaintiff in this case brought suit against the defendant to recover damages for injuries alleged to have been suffered by him through the negligence of the employees of the defendant company, in suddenly starting a street car after it had come to a full stop, while plaintiff was in the act of alighting. The case was warmly contested both upon the basic question of defendant's negligence and on the extent

of plaintiff's injuries. Upon the first question the testimony given by witnesses on behalf of the plaintiff and that given by witnesses on behalf of the defendant is so diametrically opposed as to preclude indulgence in the charitable assumption that one set of witnesses or the other was merely honestly mistaken as to the controlling facts. Unquestionably upon one side or the other there was conscious divergence from the truth. Plaintiff secured a verdict for $6,805.

Defendant now reviews the case in this court under some 24 assignments of error, only a few of which we find it necessary to examine. In the course of the trial, the plaintiff introduced the mortality tables, from which it appeared that plaintiff had an expectancy of 26.22 years. Thereupon Mr. Halpin, one of plaintiff's counsel, was sworn as a witness and gave testimony showing the present worth of $1 to be paid each year for 26 years, to the effect that the present worth of the $26 so paid would be $16.37. A motion made on behalf of defendant to strike out this testimony was overruled and errors assigned thereon. This practice was followed in *Little* v. *Bousfield & Co.*, 165 Mich. 654 (131 N. W. 63), apparently without objection. We think no error was committed in admitting the testimony of which complaint is made.

In the course of the examination of the plaintiff as to the measure of his damages, the following questions and answers appear:

"*Q.* What was your services worth to yourself in doing the work you done on the farm before your injury that you are not able to do now?

"*Mr. Stevens:* Object to that as incompetent, immaterial, and irrelevant, and suggestive, and not the proper measure of damages.

"*The Court:* Same ruling and exception. Answer.

"*A.* My labor at that time?

"*Q.* (Question read.)

"*A.* Myself?

"*Q.* Yes.

"*A.* I calculate about $3 a day, myself to go ahead and manage it and do all that work.

"*Q.* That would include the managing?

"*A.* Yes, sir.

"*Q.* You are able to do some of the managing now?

"*A.* Yes, sir.

"*Q.* You direct the work now?

"*A.* Yes, sir.

"*Q.* Tell the men what to do?

"*A.* Yes, sir.

"*Q.* You are able to do that?

"*A.* Yes, most of the time; most of the time.

"*Q.* Are you able to work with the men?

"*A.* No, sir.

"*Q.* Taking into consideration the fact that you are able to direct the men now, I will say, what were your services worth to yourself that you were able to do before the injury, that you are not able to do now?

"*Mr. Stevens:* Same objection as to the former question.

"*The Court:* Same ruling. (Exception.)

"*A.* Well, they would be worth $2 a day the year around, and, of course, through the winter the man I have is different; I don't pay him through the winter.

"*The Court:* Strike that out.

"*Q.* What I am trying to get is what the loss of his own services, that is all we claim for the measure of damages.

"*Q.* That is all."

While we do not agree with the claim of appellant that "the proper measure of damages is the amount that the plaintiff is compelled to pay for labor to do the work that he formerly did which he claimed that he was unable to do after the accident," we are still of opinion that the true measure of damages should not be based upon the plaintiff's estimate of the value of those services to himself. The true measure of plaintiff's damages upon this branch of the case would be the value in the open market of the labor and services which he had been able to perform before the injury and which because of the injury he was unable to perform thereafter.

Error is assigned upon the charge of the court, and it is claimed that improper instructions were given by the court as to the manner in which the jury should ascertain the damages to plaintiff and the present worth thereof.   An examination of the charge we think will show it to have been fairly within the rule laid down in *Little* v. *Bousfield & Co., supra,* which was approved in *Rivers* v. *Electric Co.,* 164 Mich. 696 (128 N. W. 254, 131 N. W. 86).

Several errors are assigned upon alleged improper argument of counsel for plaintiff in his argument to the jury.   In addressing the jury counsel said:

"I am not at liberty under the decision of the Supreme Court to say to you:   What would you take to be changed from your present condition to one like John Seabury?"

Exception having been made to this argument, the court said:

"There is nothing to rule on.   You may take an exception.   The jury cannot award anything in the way of punishment."

While it is admitted by counsel for appellant that this statement is a correct exposition of the law, it is argued that it constituted an indirect appeal to the feeling of sympathy of the jury.   In several recent cases the court has condemned appeals made by counsel to juries where juries have been asked to place themselves in the position of the plaintiff and to award damages on the basis of what they themselves would take to suffer as plaintiff suffered.   *Hughes* v. *City of Detroit,* 161 Mich. 283, 288 (126 N. W. 214, 137 Am. St. Rep. 504); *Morrison* v. *Carpenter,* 179 Mich. 207, 223 (146 N. W. 106, Am. & Eng. Ann. Cas. 1915D, 319); *Wells* v. *Railroad Co.,* 184 Mich. 15 (150 N. W. 340); *Jolman* v. *Alberts,* 186 Mich. 643 (153 N. W. 11); *Mortensen* v. *Bradshaw,* 188 Mich. 436 (154 N. W. 46).   With reference to this incident we content

ourselves by saying that we think counsel's reference to the fact that the decision of this court precluded him from making a particular appeal to the jury was unfortunate.

In his closing argument counsel said to the jury:

"In all my experience in 40 years, I have tried many of these cases for the Grand Trunk, and I have never known a single instance where the conductor and brakeman admitted that they had been at fault, if an injury occurred, because of their negligence.

"*Mr. Stevens:* I object to that statement.

"*Mr. Reed:* We take an exception, if the court please.

"*The Court:* All you can do is to take an exception.

"*Mr. Stevens:* Under the ruling of the Supreme Court it is not good unless the court makes a ruling.

"*The Court:* I am not ruling upon it.

"*Mr. Reed:* We except because the court does not make a ruling."

The court definitely refused to rule upon the objection at the time of the incident. At the opening of his charge he treated the matter as follows:

"Gentlemen, before taking up the merits of the case, I deem it my duty to call your attention to one statement made by Judge Williams in his argument. I know he will excuse me for calling attention to it, because it is a matter of duty, and I have no doubt if he had made the statement on reflection he would not have made it. I understood him to say that in all his experience he had never known any employees of the railway company to admit that they were negligent. That might mean he had not heard very many witnesses testify upon that subject, or it might not. I say you will consider the witnesses of the defendant in this case, all of them, the same as you would consider the witnesses upon the other side. In other words, you are to assume in the first place the witnesses intend to speak the truth, then you will test their testimony by their appearance, by their cross-examination. You will inquire whether they are corroborated or not, is such testimony feasible, and such witnesses as you finally determine are speaking the

truth you will receive it and act upon it.  When you have determined a witness is mistaken or has stated an untruth, you will reject his testimony and not act upon it.  You will consider all the witnesses, no matter whether they are conductors or motormen or detectives of defendant alike; treat them all alike and consider them in the same way."

Touching this remark, counsel for plaintiff says:

"That this statement was outside of the record may be conceded, and that it is a statement that could be truthfully made by any one having had experience in trying similar cases is, we think, also true.  It does not seem to us possible that a just judgment should be interfered with because of the statement of such a palpable truth."

We are of opinion that this argument was highly prejudicial.  As has been before pointed out, there was a sharp conflict in testimony between the employees in charge of the car from which plaintiff fell and the witnesses for the plaintiff.  One set of witnesses or the other was obviously falsifying.  This being the state of the record, counsel for plaintiff, a man of high probity and wide experience as a lawyer, particularly in the defense of a railway corporation in suits growing out of injuries caused by the alleged negligence of the railway employees, in effect, testified to the jury that such employees were not worthy of credence.  The refusal of the court to promptly condemn the argument at the moment attention was called to it tended to further prejudice the defendant's rights. The tardy recognition by the court of the erroneous character of the argument and his apologetic treatment of the incident, in our opinion, failed to remove from the minds of the jury its legitimate effect.

The case is reversed, and new trial ordered.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.  PERSON, J., did not sit.