TIFFANY v THE CHRISTMAN COMPANY

LEWIS v THE CHRISTMAN COMPANY

Docket Nos. 77-4233, 77-4234. Submitted March 14, 1979, at Lansing.
—Decided November 5, 1979.

Hugh Tiffany and William T. Lewis were employees of Battle
Creek Steel Fabricating Company, the fabricator of steel beams
used in the erection of the steel framework of Central Michigan
University's athletic center building. On June 19, 1972, Tiffany
and Lewis were working on the structure, attempting to con-
nect the second of two horizontal steel beams to a vertical steel
column by what is known as a "double connection". With such
a connection, common bolts are used to hold two beams to a
single column. When one beam has already been bolted to the
column it is thus necessary to remove the nuts from the bolts
holding the first beam in order to attach the second beam.
While the nuts are removed, the first beam is connected to the
column only by means of the threads on the bolts.

While attempting to make the connection with the second
beam, the first beam began to pull away from the column
causing Tiffany and Lewis to fall to the concrete floor of the

REFERENCES FOR POINTS IN HEADNOTES

[1] 31 Am Jur 2d, Expert and Opinion Evidence §§ 36, 39.
[2] 31 Am Jur 2d, Expert and Opinion Evidence § 104.
[3] 22 Am Jur 2d, Damages §§ 89, 92-96.
[4] 29 Am Jur 2d, Evidence § 632.
[5] 31 Am Jur 2d, Expert and Opinion Evidence § 31.
[6] 5 Am Jur 2d, Appeal and Error §§ 702, 772-774.
[7] 75 Am Jur 2d, Trial § 483.
[8] 41 Am Jur 2d, Indemnity § 42.
[9] 57 Am Jur 2d, Negligence § 76.
[10] 57 Am Jur 2d, Negligence § 8.
[11] 22 Am Jur 2d, Damages §§ 346, 359.
[12] 22 Am Jur 2d, Damages § 316.
    29 Am Jur 2d, Evidence § 113.
[13] 22 Am Jur 2d, Damages §§ 122-124.
    57 Am Jur 2d, Negligence § 160.
[14] 5 Am Jur 2d, Appeal and Error §§ 623, 891.
[15] 22 Am Jur 2d, Damages § 366.

structure, 43 feet below. Both workmen suffered serious personal injury.

Tiffany and Lewis subsequently brought actions in Ingham Circuit Court against The Christman Company, the general contractor for the project, alleging various claims of negligence in connection with the accident. Christman denied liability and brought a third-party action against Battle Creek Steel Fabricating Company, seeking indemnification should Christman be held liable. Christman later filed a similar third-party complaint against Daverman Associates, Inc., the architect on the project.

Plaintiffs were granted leave to amend their complaints against Christman. The amended complaints added the plaintiffs' wives as plaintiffs in claims for loss of consortium. Citizens Insurance Company of America, which had been paying worker's compensation benefits to the injured workers, was permitted to intervene and joined in the amended complaints.

In 1975, the plaintiffs filed complaints against Daverman Associates, Inc., alleging that Daverman was negligent in the manner in which it had prepared the plans for the project. They further alleged that Daverman negligently designed the connection and negligently supervised the project.

Daverman denied liability and subsequently brought third-party claims against both Christman and Battle Creek Steel for contractual indemnification. Daverman also alleged in its complaint against Battle Creek Steel a right to common-law indemnification.

Daverman, by leave of court, also filed a third-party complaint against Sofyanos, Brown and Associates, a subcontractor of Battle Creek Steel, seeking indemnification should Daverman be held liable.

On May 13, 1977, Daverman filed a motion to adjourn the trial which was scheduled for May 24, 1977, on the basis that S. John Sofyanos, the principal of Sofyanos, Brown and Associates, was in Greece and would not return in time for the trial. Plaintiffs opposed this motion and filed a motion to sever Daverman's claim against Sofyanos from the principal action. Daverman's motion to adjourn was denied and plaintiffs' motion to sever was granted.

Prior to trial, Christman and Battle Creek Steel filed a stipulation to dismiss with prejudice Christman's third-party complaint against Battle Creek Steel, the two parties having come to a settlement regarding their potential liability. Also prior to trial, the trial judge granted plaintiffs' motion *in*

*limine* to preclude any of the defendants from bringing to the jury's attention the injured worker's entitlement to worker's compensation benefits.

At the conclusion of a three-week trial the Ingham Circuit Court, Michael G. Harrison, J., granted Battle Creek Steel's motion for a directed verdict on Daverman's third-party claim for common-law indemnification. Judgments of no cause of action were entered in all the claims except the plaintiffs' claims against Daverman. On the plaintiffs' claims against Daverman, judgments were entered awarding damages to the plaintiffs. Daverman appeals, alleging that 1) the conclusions of one of the plaintiffs' expert witnesses were based upon inadmissible hearsay which was not in evidence, 2) the expert improperly considered inflation in his computations, 3) overall the expert's testimony was so speculative that it should have been stricken, 4) the trial judge erred in refusing to permit Daverman to cross-examine certain witnesses about the settlement of Christman's third-party indemnification claim against Battle Creek Steel, 5) the trial judge erred in permitting plaintiff Hugh Tiffany to state his belief as to the cause of the accident because he was not qualified to give such an opinion, 6) the trial court erred in denying Daverman's motion for a mistrial, 7) the trial court erred in denying Daverman's motion for a directed verdict on plaintiffs' claims against it, 8) the trial court erred in directing a verdict for Battle Creek Steel on a claim of common-law indemnification in Daverman's third-party complaint against Battle Creek Steel, 9) the trial court erred in its instruction to the jury regarding the standard of care for architects and engineers, 10) the trial court erred in its instructions to the jury regarding the discounting of future damages to present worth, 11) the trial court erred in its instructions to the jury regarding the injured workers' life expectancy, 12) the trial court improperly instructed the jury that, in awarding damages, it could consider whether plaintiff Hugh Tiffany had suffered an aggravation of a preexisting injury as an element of damages, 13) the trial court erred in failing to instruct the jury in accordance with an instruction Daverman had submitted regarding an alleged tacit admission by Battle Creek Steel, 14) the trial court erred in denying Daverman's motion for an adjournment and in severing Daverman's claim against Sofyanos, and 15) the trial court erred when it denied Daverman's motion for a remittitur. *Held:*

1. There is no per se rule barring expert witnesses from relying upon hearsay or other nonrecord evidence in reaching their conclusions. There is no requirement that the data under-

lying an expert's opinion be admitted or be admissible in evidence. Such a requirement is left to the trial judge's discretion. There was no abuse of discretion on this matter.

2. The existence of inflation has become such a fact of present-day life that it cannot realistically be completely ignored. The fact that the expert projected a three and one-half percent wage increase, as a reflection of inflation, does not render his testimony infirm.

3. Any predictions regarding future losses are based on assumptions regarding wage trends and work-life expectancy that are not susceptible to precise examination. However, case law recognizes the propriety of an award of such damages. Daverman's arguments regarding the speculative nature of the expert's testimony go more to the weight to be accorded than to its admissibility. No error occurred in admitting this expert opinion testimony.

4. Although evidence of a settlement may generally be admitted in order to show bias, the scope of cross-examination on such a matter is left to the sound discretion of the trial judge. Daverman made no attempt to show the trial judge the existence of a connection between the fact of this settlement and any testimony of any witness. No offer of proof was made in this regard, despite the trial judge's express indication that he would permit such an offer. There was no abuse of discretion in the trial judge's not permitting Daverman to cross-examine certain witnesses about the settlement reached between Christman and Battle Creek Steel.

5. Daverman failed to object to the testimony of plaintiff Hugh Tiffany on the ground that Tiffany was not qualified to give an opinion as to the cause of the accident. Appellate review of this issue is waived.

6. The Court of Appeals will not interfere with a trial judge's disposition of a mistrial motion unless there has been an abuse of discretion resulting in a miscarriage of justice. There was no such abuse of discretion in the trial judge's denial of Daverman's motion for a mistrial.

7. In considering a motion for a directed verdict, the trial court is bound to view the evidence in a light most favorable to the nonmovant and it should deny such a motion if the facts, when so viewed, are such that reasonable persons could honestly reach different conclusions. On the basis of evidence presented in this case, a reasonable person could conclude that Daverman was liable for negligence in either the design of the beams, the method of connection or the failure to modify the

choice of connection after an earlier, similar accident. The motion for a directed verdict was properly denied.

8. To be entitled to common-law indemnity, a party must prove freedom from active causal fault. There was no theory of liability alleged in this case where Daverman could be held liable without there being some determination of fault on Daverman's part. The trial court did not err in directing a verdict against Daverman on its claim for common-law indemnification in its third-party complaint against Battle Creek Steel.

9. Daverman's claim that the trial court's instructions permitted a finding of liability on its part should the jury conclude that it failed to use the ordinary care of a reasonably prudent person rather than the ordinary care common to the profession is without merit. The instructions, when viewed in their entirety, clearly indicated that Daverman was held to a duty of ordinary skill and care common to its profession. Nor did the trial court err in refusing to give Daverman's proffered instruction. Since the trial judge instructed the jury as to those situations where Daverman could be held liable, it was unnecessary to instruct on those situations where liability could not be imposed.

10. The trial court's instruction to the jury to reduce the amount of future damages by an annual rate of five percent was in accordance with existing precedent. There was no error.

11. The trial judge was not required, in this instance, to instruct the jury according to the statutory tables on mortality, since Daverman never requested an instruction based on the statutory tables. There was no error in instructing the jury in accordance with the only testimony offered at trial on life expectancy.

12. The instruction to the jury that, in awarding damages, it could consider whether plaintiff Hugh Tiffany had suffered an aggravation of a preexisting injury as an element of damages was not error. An allegation of such aggravation had been made and there was testimony admitted, without objection, as to the antecedent injury and the reinjury.

13. As to Daverman's other allegations of instructional error, either no objection was raised at trial or the objection, as raised, was not in accordance with the court rules. The issues are not preserved for appeal.

14. The grant or denial of a motion to adjourn a trial is within the sound discretion of the trial court. The trial judge's

decision to proceed to trial and sever Daverman's claim against Sofyanos was not an abuse of discretion.

15. A jury verdict will be set aside as excessive only if it has been shown that (a) the verdict was based on prejudice, caprice, passion, partiality, sympathy or kindred reasons, or (b) the verdict is so great as to be shocking to the judicial conscience. The verdict was not improper. The denial of Daverman's motion for remittitur was proper.

Affirmed.

1. WITNESSES — EXPERT WITNESSES — EVIDENCE — HEARSAY EVIDENCE — RULES OF EVIDENCE.

There is no per se rule barring expert witnesses from relying upon hearsay or other nonrecord evidence in reaching their conclusions (MRE 703).

2. WITNESSES — EXPERT WITNESSES — FUTURE WAGE LOSSES — INFLATION.

The testimony of an expert witness, testifying as to an injured plaintiff's future loss of wages, is not rendered infirm by the fact that the witness, in computing the wage loss, projected an annual three and one-half percent wage increase as a reflection of inflation.

3. DAMAGES — FUTURE WAGE LOSSES — SPECULATIVE DAMAGES — EVIDENCE — WEIGHT OF EVIDENCE — ADMISSIBILITY.

Case law has recognized the propriety of an award of damages for future wage losses, although any prediction regarding such losses is inherently speculative; arguments that such damages are speculative go more to the weight to be accorded the evidence relating to the amount of damages for such losses than to the admissibility of the evidence.

4. EVIDENCE — SETTLEMENT — CROSS-EXAMINATION — SCOPE OF CROSS-EXAMINATION — DISCRETION.

Evidence of a settlement between a defendant who is a third-party plaintiff for an indemnification claim and the third-party defendant on the indemnification claim may generally be admitted in order to show bias which would affect the principal action; however, the scope of cross-examination on such a matter is left to the sound discretion of the trial judge.

5. APPEAL AND ERROR — WITNESSES — OPINION TESTIMONY — QUALIFICATIONS OF WITNESS — FAILURE TO OBJECT.

Failure to make an objection at trial to the opinion testimony of a witness on the ground that the witness was not qualified to

give an opinion on the matter in question waives appellate review on that ground.

6. APPEAL AND ERROR — MOTION FOR MISTRIAL — DISCRETION — MISCARRIAGE OF JUSTICE.

The Court of Appeals, as a general rule, will not interfere with a trial judge's disposition of a motion for a mistrial unless there has been an abuse of discretion resulting in a miscarriage of justice.

7. MOTIONS — DIRECTED VERDICT — EVIDENCE — QUESTION OF FACT.

A trial court, in considering a motion for a directed verdict, is bound to view the evidence in a light most favorable to the nonmovant; the trial court should deny such a motion if the facts, when so viewed, are such that reasonable persons could honestly reach different conclusions.

8. INDEMNITY — ACTIVE CAUSAL FAULT — COMMON-LAW INDEMNITY.

A party must prove that it is free from active causal fault in order to be entitled to common-law indemnity.

9. NEGLIGENCE — STANDARD OF CARE — INSTRUCTIONS TO JURY — APPEAL AND ERROR.

The claim of a defendant-architectural firm, in a negligence action, that the instructions to the jury improperly permitted a finding of liability on its part should the jury conclude that the defendant failed to use the ordinary care of a reasonably prudent person, rather than the ordinary care common to the defendant's profession, is without merit where the instructions, when viewed in their entirety, clearly indicated that the defendant was held to a duty of ordinary skill and care common to its profession.

10. NEGLIGENCE — INSTRUCTIONS TO JURY — LIABILITY OF DEFENDANT.

An instruction to the jury in a negligence action on those situations where liability could not be imposed on a defendant is unnecessary where an instruction has been given as to those situations where the defendant could be found liable.

11. DAMAGES — DISCOUNTING FUTURE DAMAGES — INSTRUCTIONS TO JURY.

An instruction to the jury on the rate to be used in discounting future damages, using a rate lower than the statutory interest rate on judgments, was not improper where the instruction given was in accordance with existing case precedent on the rate to be used in discounting future damages.

12. TRIAL — INSTRUCTIONS TO JURY — LIFE EXPECTANCY — STATU-
TORY TABLES — JUDICIAL NOTICE.

A trial judge may take judicial notice of statutory life-expectancy
tables; however, a judge was not required to take judicial notice
of the statutory tables where the party objecting on appeal to
the instructions given on mortality figures failed to request an
instruction in accordance with the statutory tables and where
the instruction given was based on the only testimony offered
at trial on life expectancy; life expectancy may be proved by
means other than the statutory tables (MCL 500.834; MSA
24.1834).

13. DAMAGES — AGGRAVATION OF PREEXISTING INJURY — INSTRUC-
TIONS TO JURY — NEGLIGENCE.

An instruction to the jury, in a negligence action, that the jury
could consider whether a plaintiff had suffered an aggravation
of a preexisting injury as an element of damages was proper
where there was testimony in the record to support the instruc-
tion.

14. APPEAL AND ERROR — INSTRUCTIONS TO JURY — OBJECTIONS —
COURT RULES.

No party may assign as error the giving or the failure to give an
instruction unless he objects thereto before the jury retires to
consider the verdict, stating specifically the matter to which he
objects and the grounds for his objection; an objection at trial
to certain instructions given does not preserve the issue for
appellate review where the objection raised at trial does not
meet the requirements of the Court Rule pertaining to objec-
tions to jury instructions (GCR 1963, 516.2).

15. CONTINUANCE — MOTIONS — ADJOURNMENT — DISCRETION.

The grant or denial of a motion to adjourn a trial is within the
sound discretion of the trial court.

16. TRIAL — JURY VERDICT — SETTING ASIDE VERDICTS — EXCESSIVE
VERDICTS.

A jury verdict will be set aside as excessive only if it has been
shown that 1) the verdict was based on prejudice, caprice,
passion, partiality, sympathy or kindred reasons, or 2) the
verdict is so great as to be shocking to the judicial conscience;
there is no absolute standard by which damages are measured
in personal injury cases.

*Van Benschoten & Van Benschoten, P.C.* (by
*Harvey E. Van Benschoten* and *Lawrence A. Hurl-
burt),* for plaintiffs.

*Foster, Swift, Collins & Coey, P.C.* (by *Webb A.*

*Smith* and *Jonathan E. Raven),* for defendant Daverman Associates, Inc.

*J. Michael Fordney, P.C.,* for defendant The Christman Company.

*Smith, Haughey, Rice & Roegge* (by *Lance R. Mather),* for third-party defendant Battle Creek Steel Fabricating Company.

Before: CYNAR, P.J., and J. H. GILLIS and N. A. BAGULEY,* JJ.

CYNAR, P.J. Defendant Daverman Associates, Inc., (hereinafter Daverman) appeals as of right from an Ingham County jury verdict awarding plaintiffs a total of $830,000 damages as a result of defendant Daverman's negligence.

The action arises out of a June 19, 1972, accident which occurred during the erection of the steel framework of Central Michigan University's athletic center building. At the time, plaintiffs William Lewis and Hugh Tiffany were attempting to connect a horizontal steel beam to a vertical steel column. Another horizontal beam had previously been connected to the opposite side of the column and plaintiffs were attempting to connect the other beam by what is known as a "double connection". With such a connection, common bolts are used to hold two beams to a single column. When one beam has already been bolted to the column, as here, it is thus necessary to remove the nuts from the bolts in order to attach the second beam. While the nuts are removed, the first beam is connected to the column only by means of the threads on the bolts.

At the time they were attempting to make such

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

a double connection, plaintiffs were 43 feet above the building's concrete floor. Plaintiff Tiffany was sitting atop the beam that had already been attached and plaintiff Lewis was sitting on a joist near the connection. The beam to be attached was lifted to the connection by means of a crane and was held in position by Lewis, while Tiffany removed the nuts from the bolts holding the other beam to the column. When Tiffany removed the nuts, the beam that had been attached began to separate from the column. That beam bent toward the ground causing Tiffany to fall to the ground. Plaintiff Lewis at first grabbed the other beam, but he too fell to the ground. Both plaintiffs suffered serious personal injury as a result of this accident.

In August and September of 1973 the two injured workers filed suits against the general contractor for the project, The Christman Company (hereinafter Christman), alleging various claims of negligence in connection with the accident. Christman denied liability and on September 19, 1974, it filed a third-party complaint against the fabricator of the steel beams, Battle Creek Steel Fabricating Company, which was also plaintiffs' employer, seeking indemnification should it be held liable. Subsequently Christman filed a similar third-party complaint against Daverman, the architect on the project.

Subsequently, plaintiffs were granted leave to amend their complaints against Christman. The amended complaints added the parties' wives as plaintiffs in claims for loss of consortium. Citizens Insurance Company of America, which had been paying worker's compensation benefits as a result of plaintiffs' injuries, was permitted to intervene and joined in the amended complaints.

On March 28, 1975, plaintiffs filed complaints

against Daverman, which up to that time had been in the case only as a third-party defendant. These complaints alleged that Daverman was negligent in the manner in which it had prepared the plans for the project. They further alleged that Daverman negligently designed the connection and negligently supervised the project. Claims of gross negligence and liability for injuries arising out of inherently dangerous work were included in this complaint.

Daverman denied liability and subsequently brought third-party claims against both Christman and Battle Creek Steel. Both of these third-party actions were for contractual indemnification, while the complaint against Battle Creek Steel also alleged a right to common-law indemnification.

On May 6, 1977, Daverman, by leave of court, also filed a third-party complaint against Sofyanos, Brown and Associates, (hereinafter Sofyanos) seeking indemnification should it be held liable. Daverman alleged that Sofyanos, as a subcontractor of Battle Creek Steel, had negligently prepared shop drawings detailing the connection between the beams and the column. One week later, on May 13, 1977, Daverman filed a motion to adjourn the trial. In support of this motion Daverman noted that S. John Sofyanos, the principal of Sofyanos, was in Greece and would not be returning to the United States for another month or two. At this time, trial had been scheduled for May 24, 1977. Plaintiffs opposed this motion and filed a motion to sever Daverman's claim against Sofyanos from the principal action. On May 18, 1977, Daverman's motion was denied and plaintiffs' motion to sever was granted.

Prior to trial, Christman and Battle Creek Steel filed a stipulation with the court to dismiss with

prejudice Christman's third-party complaint against Battle Creek Steel, the two parties having come to a settlement regarding their potential liability. Also prior to trial, the trial judge granted plaintiffs' motion *in limine* to preclude any of the defendants from bringing to the jury's attention the injured workers' entitlement to worker's compensation benefits.

Trial commenced on May 24, 1977, and continued for approximately three weeks. Testimony at trial tended to establish that:

1) the steel column had been designed in such a way that its "slenderness ratio", or tendency to bend, exceeded the maximum ratio set forth in the manual published by the American Institute of Steel Construction;

2) that connection methods other than the double connection technique are usually used above fifteen feet from the ground;

3) that Daverman had altered drawings submitted by Battle Creek Steel to require a double connection;

4) that Daverman knew a prior accident almost identical to plaintiffs' had occurred six weeks before plaintiffs' accident and that no remedial measures were undertaken; and

5) that Daverman's contract with the State of Michigan stated that Daverman was to "supervise and coordinate at the site the work of the several contractors".

At the conclusion of the trial the trial judge granted Battle Creek Steel's motion for a directed verdict on Daverman's third-party claim for common-law indemnification. All the other claims were presented to the jury. The jury returned a verdict of no cause of action in all the claims except plaintiffs' claims against Daverman. The jury found Daverman liable for the following dam-

ages: $430,000 to Hugh Tiffany; $50,000 to Pauline Tiffany; $310,000 to William Lewis; and $40,000 to Shirley Lewis. The motion for a new trial being denied, Daverman now brings this appeal, raising 20 issues to be considered.

I. *Issues relating to rulings on testimony.*

In order to establish future loss of earning capacity as a element of damages, plaintiffs called as a witness Dr. John P. Henderson, a professor of economics at Michigan State University. This witness, over objection, computed future wage loss by employing a six percent annual wage increase rate. This figure was based upon the witness's study of wage increases in the workers' union local and took into account an annual wage increase of three and one-half percent to reflect inflation and an additional two and one-half percent annual productivity wage increase. The injured workers' projected future wage losses were then computed, using their expected work lives and the estimated earnings for each year, and this result was discounted to reflect the present value of the future lost earnings. The witness also adjusted plaintiff William Lewis's lost earnings to reflect the fact that he could mitigate his losses by operating a cabin and boat rental operation.

Daverman contends that this evidence was improperly admitted. It claims that the expert's conclusions were based upon inadmissible hearsay which was not in evidence, that the expert improperly considered inflation in his computations and that overall the testimony was so speculative that it should have been stricken.

We find no error in the admission of the expert's evidence. There exists no per se rule barring expert witnesses from relying upon hearsay or other nonrecord evidence in reaching their conclusions.

Neither GCR 1963, 605,[1] which was in effect at the time of the trial, nor the present rule, MRE 703,[2] requires the data underlying an expert's opinion to be admitted or admissible in evidence. Rather, such a requirement is left to the trial judge's discretion. In light of the fact that Daverman had ample opportunity to cross-examine the witness concerning the data underlying his conclusions, we find no abuse of discretion in the instant case.

Similarly, we conclude that no reversible error occurred when the expert considered inflation as a factor when computing the future loss of wages. Although prior case law is not uniform on this point, compare *Freeman v Lanning Corp,* 61 Mich App 527, 530-531; 233 NW2d 68 (1975), and *Mueller v Roseville,* 38 Mich App 170, 172; 195 NW2d 882 (1972), we believe that the existence of inflation has become such a fact of present-day life that it cannot realistically be completely ignored. The fact that the expert projected an annual three and one-half percent wage increase, as a reflection of inflation, does not render his testimony infirm.

We readily acknowledge Daverman's contention that the expert's testimony *in toto* is, to a certain

---

[1] GCR 1963, 605 stated:

"Questions calling for the opinion of an expert witness need not be hypothetical in form unless the judge, in his discretion, so requires. The witness may state his opinion and reasons therefor without first specifying data on which it is based, but upon cross-examination, he may be required to specify such data. The judge, in his discretion, may require that a witness, before testifying in terms of opinion or inference, be examined first concerning the data upon which the opinion or inference is founded. Testimony of an expert witness in the form of opinions or inferences otherwise admissible is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of fact."

[2] MRE 703 states:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. The court may require that underlying facts or data essential to an opinion or inference be in evidence."

extent, speculative. Any prediction regarding future losses is inherently speculative. Underlying such a prediction are assumptions regarding wage trends and work-life expectancy that are not susceptible to precise estimation. However, prior case law has recognized the propriety of an award of such damages. See *Bathke v Traverse City,* 308 Mich 1, 13; 13 NW2d 184 (1944), and *Coger v Mackinaw Products Co,* 48 Mich App 113, 125; 210 NW2d 124 (1973). In estimating these damages in the present case the witness relied upon data which attempted to assess accurately those factors used to compile plaintiffs' future losses. We thus conclude that Daverman's arguments go more to the weight of the evidence than to its admissibility and that no error occurred in admitting the testimony.

Daverman next contends that the trial judge erred in refusing to permit it to cross-examine certain witnesses about the settlement of Christman's third-party indemnification claim against Battle Creek Steel. We find no error. Although evidence of a settlement may generally be admitted in order to show bias, the scope of cross-examination on such a matter is left to the sound discretion of the trial judge. *Reno v Heineman,* 56 Mich App 509, 513-514; 224 NW2d 687 (1974). Daverman made no attempt to show the trial judge the existence of a connection between the fact that this settlement and any testimony of any witness. No offer of proof was made in this regard, despite the trial judge's express indication that he would permit such an offer. Under these circumstances, we find no abuse of discretion in the trial judge's ruling.

Daverman also contends that the trial judge erred in permitting plaintiff Hugh Tiffany to state

his belief as to the cause of the accident. It claims that the witness was not qualified to give such an opinion. However, no objection was made to this testimony on the ground now asserted on appeal. Thus, Daverman had waived appellate review of this issue. *Wade v Bay City,* 57 Mich App 581, 588; 226 NW2d 569 (1975). Further, after objection had been made as to qualification, the trial judge may have been convinced that the foundation was sufficient or may have allowed further proof to be submitted.

II. *Issues relating to rulings on Daverman's motions for mistrial.*

On appeal, Daverman raises seven issues regarding the trial judge's denial of its motion for a mistrial. As a general rule this Court does not interfere with a trial judge's disposition of a mistrial motion unless there was an abuse of discretion resulting in a miscarriage of justice. *Kucken v Hygrade Food Products Corp,* 51 Mich App 471, 473; 215 NW2d 772 (1974).

We note initially that no objection to the closing argument of Battle Creek Steel's attorney was made at trial. Therefore Daverman is precluded from raising issues regarding the propriety of his argument at this time. *George v Travelers Indemnity Co,* 81 Mich App 106, 116; 265 NW2d 59 (1978).

We further note that several of the other asserted grounds for a mistrial were objected to and a curative instruction was subsequently given to the jury. We conclude that these instructions were sufficient to cure any prejudice that may have resulted from the following occurrences:

1) opposing counsels' comments in closing argument suggesting inferences to be drawn from Dav-

erman's failure to call or cross-examine certain witnesses;[3]

2) a witness continuing his response to a question after counsel for Daverman had objected;[4]

3) Mrs. Tiffany's testimony that her husband was not taken home from the hospital by ambulance because they could not afford the expense;[5]

4) plaintiffs' counsel's opening argument, characterizing the slenderness ratio of the steel beams as "illegal";[6] and

5) plaintiffs' counsel's concluding comment in

---

[3] The jury was instructed as follows:

"I would further instruct you that there were certain persons who were in the Courtroom during the course of the trial which has just taken place. Any party could properly have called any of these individuals. I would instruct you that no presumption of, or inference, is to attach to the fact that no testimony was elicited from these individuals."

See also *Grubaugh v City of St Johns,* 82 Mich App 282, 289-290; 266 NW2d 791 (1978), which tends to indicate that the above instruction was not even necessary.

[4] The jury was instructed as follows:

"Ladies and gentlemen, I would instruct you that you should disregard any response that you may have heard to the last question. It should be totally disregarded by you and not considered in your deliberations."

[5] The jury was instructed as follows:

"You may be seated. Ladies and gentlemen, I would instruct you at this time that you are to disregard and not take into consideration in any way the response by the witness to the question of the reason why Mr. Tiffany left the hospital in a car rather than an ambulance, and the response being that they could not afford to go by ambulance. That is to be totally disregarded by you as not being material in this particularly *[sic]* case."

Contrary to its contention on appeal, at trial Daverman never raised the question of whether it should be permitted to question Mrs. Tiffany about insurance coverage for ambulance expenses.

[6] The jury was instructed as follows:

"Ladies and gentlemen, during the opening statement by Mr. Van Benschoten [plaintiffs' counsel], there was mention made during the discussion of the slenderness ratio, that the acceptable ratio is 200, that there was a ratio between 230 to 235, and there was some comment that this was illegal. The Court would instruct you that you are to disregard the statement that this is illegal. I think that that was an overstatement, and that should be disregarded by you."

closing argument, urging the jury to "assess their damages as they truly are" and noting that the verdict "will be heard by the entire construction industry". See generally *LeBlanc v Lentini,* 82 Mich App 5, 20; 266 NW2d 643 (1978).

Daverman contends that the trial judge erred in denying its motion for mistrial made in response to Battle Creek Steel's opening statement. This statement noted that plaintiffs had only sued Daverman and Christman, and not Battle Creek Steel. The statement further indicated that Battle Creek, in its capacity as employer, had satisfied certain responsibilities to its employees and that it was not its responsibility to reimburse Daverman for its own negligence.

Daverman contends that the above comments impermissibly implied to the jury that Battle Creek had paid worker's compensation benefits to its injured employees. We find this argument to be without merit. This was a complex multi-party action. At the time of trial, Battle Creek Steel could only be liable under the indemnification claim of Daverman. Although the means used by Battle Creek Steel to convey this information may have implied that worker's compensation benefits had been paid, such an incidental reference to insurance coverage was not intended to "inflame the passions of the jury" and did not warrant the granting of a mistrial. *Cacavas v Bennett,* 37 Mich App 599, 604; 194 NW2d 924 (1972).

III. *Issues relating to directed verdicts.*

Daverman contends that the trial judge erred in denying its motion for a directed verdict on plaintiffs' claims against it. In considering a motion for a directed verdict, the trial court is bound to view the evidence in a light most favorable to the nonmovant, *Armstrong v LeBlanc,* 395 Mich 526,

532; 236 NW2d 419 (1975), and it should deny such a motion if the facts, when so viewed, are such that reasonable persons could honestly reach different conclusions. *Johnson v Grand Trunk Western R Co,* 58 Mich App 708, 713; 228 NW2d 795 (1975).

In the present case plaintiffs presented evidence regarding Daverman's supervisory duties on the job and its role in designing the steel beams and columns for the work project. They also presented expert testimony showing that the columns were not in conformity with industry standards and that the means of connecting the beams was inherently unsafe and seldom used at the height involved herein. Testimony was also heard regarding a prior accident involving similar beams and the same connection methods. On the basis of this evidence, a reasonable person could conclude that Daverman was liable for negligence in either the design of the beams, the methods of connection or the failure to modify the choice of connection after the earlier accident. Thus, the motion for directed verdict was properly denied.

Daverman also contends that the trial judge erred in directing a verdict on a claim of common-law indemnification in its third-party complaint against Battle Creek Steel.

We find no error. The third-party complaint alleged a claim for both common-law and contractual indemnification. However, the jury was instructed only on the latter theory. This was proper, because a party must prove that it is free from active causal fault to be entitled to common-law indemnity. *Minster Machine Co v Diamond Stamping Co,* 72 Mich App 58, 62; 248 NW2d 676 (1976). There was no theory of liability alleged in this case where Daverman could be held liable

without there being some determination of fault on its part. Even if the jury concluded that the work involved was inherently dangerous, the liability imposed upon Daverman would not be based upon a theory of *respondeat superior,* but rather upon a finding of negligence on Daverman's part. See *Witucke v Presque Isle Bank,* 68 Mich App 599, 610; 243 NW2d 907 (1976).

IV. *Issues relating to the jury instructions.*

Daverman raises six issues relating to the instructions given to the jury.

The first contention of instructional error concerns the instructions regarding the standard of care for architects and engineers. Daverman claims that the instructions permitted a finding of liability on its part should the jury conclude that it failed to use the ordinary care of a reasonably prudent person, rather than the ordinary care common to the profession. It also claims that the trial judge erred in refusing to give its instruction that Daverman was not a warrantor of its specifications.

This issue is without merit. The instructions, when viewed in their entirety,[7] clearly indicated that Daverman was held to a duty of ordinary skill and care common to its profession. *Chapel v Clark,* 117 Mich 638, 640; 76 NW 62 (1898). Instructions on the meaning of the phrases "negligence" and "ordinary care", although ostensibly applicable to Daverman, were never linked to its standard of care. Rather, these phrases were used in defining the standard of care imposed upon Christman and plaintiffs.

---

[7] At trial Daverman contended that the comment was a call for punitive damages. Any prejudice in this regard was cured by the following instruction.

"Your verdict must be solely to compensate the Plaintiff for his damages and not to punish the Defendant."

Nor did the trial judge err in refusing to give Daverman's proffered instruction. Since the trial judge instructed the jury as to those situations where Daverman could be held liable, it was unnecessary to instruct on the other side of the coin, *i.e.,* those situations where liability could not be imposed. See for example *Van Arsdale v Olympia, Inc,* 310 Mich 662, 673; 17 NW2d 790 (1945). Furthermore, plaintiffs never claimed that Daverman breached any warranty in its role as architect. To inject such an issue into this already complex case could only have served to confuse the jury. *Elbert v Saginaw,* 363 Mich 463, 482; 109 NW2d 879 (1961). Thus, the trial judge properly rejected Daverman's proposed instruction.

Daverman next contends that the trial judge erred in his instructions regarding the discounting of future damages to present worth. In accordance with SJI 34.03, the trial judge instructed the jury to reduce the amount of future damages by an annual rate of five percent. Daverman notes that presently the statutory interest rate on judgments is six percent, MCL 600.6013; MSA 27A.6013 as amended by 1972 PA 135, § 1, effective March 30, 1973, and contends that accordingly the judge should have instructed the jury to discount future damages by a six percent annual rate.

The five percent annual rate for discounting future damages was first set forth in *Rivers v Bay City Traction & Electric Co,* 164 Mich 696, 708; 128 NW 254 (1910), and has been subsequently followed. *Seabury v Detroit United R Co,* 194 Mich 423, 427; 160 NW 570 (1916), *Pierce v New York Central R Co,* 304 F Supp 44, 44-45 (WD Mich, 1969). Although Daverman's argument has some

merit,[8] we believe that any variation from this rule should come either from the Supreme Court or the Legislature. Therefore, we conclude that no error occurred as a result of the trial judge instructing the jury in accordance with the existing precedent.

Daverman next contends that the trial court erred in its instructions to the jury regarding the plaintiffs' life expectancies. Daverman claims that the judge should have instructed the jury in accordance with the mortality tables contained in MCL 500.834; MSA 24.1834. Instead, the trial judge instructed the jury in accordance with the life-expectancy figures offered in testimony by one of plaintiffs' expert witnesses. The figures contained in this testimony differed from those in the statute by a couple of years.

We find no error. Although a trial judge *may* take judicial notice of the statutory tables, *Alley v Klotz*, 320 Mich 521, 539; 31 NW2d 816 (1948), we conclude that the judge was not required to do so in this instance.

A different result might be required had Daverman properly requested an instruction in accordance with the statutory tables. However, we need not address that question. In response to Daverman's after-the-fact objection[9] to the instructions, the trial judge stated:

"THE COURT: I would only indicate in response to the mortality tables, I specifically asked that question when the mortality tables were given to me. I said,

---

[8] We note, however, that the statutory interest rate on judgments was amended from five percent to six percent effective March 30, 1973, almost a year after plaintiffs' cause of action had accrued. 1972 PA 135, § 1.

[9] The objection at trial was directed to the *form* of the instruction and not the figures contained therein.

'Does anybody object to those?' And nobody said anything. Because I would have gone to the State Statutes. I frankly was—I paused at that point and was surprised that there were no objections placed in our discussions on that, so I just want the record to reflect that much as to that.''

Since Daverman never requested an instruction as to the life-expectancy figures contained in MCL 500.834; MSA 24.1834, we find no error in the trial judge instructing the jury in accordance with the only testimony on life expectancy offered at trial. See *Opsomere v Opsomere,* 167 Mich 636, 638; 133 NW 518 (1911). It is established that life expectancy may be proved by means other than the statutory tables. *Garton v Powers,* 252 Mich 442, 445; 233 NW 373 (1930), *Little v Bousfield & Co,* 165 Mich 654, 656; 131 NW 63 (1911).

Daverman next claims that the trial court erred when it instructed the jury that, in awarding damages, it could consider whether plaintiff Hugh Tiffany had suffered an aggravation of a preexisting injury as an element of damages. Although it is error to give such an instruction when there is no testimony in the record to support it, *Campbell v Charles J Rogers Construction Co,* 58 Mich App 411, 419; 228 NW2d 398 (1975), such is not the case here. Plaintiff Hugh Tiffany alleged an aggravation of a preexisting condition as an element of damages in his complaint. Testimony of antecedent injuries was admitted without objection and there was testimony of reinjury in the June 19 accident. The instruction was properly given.

Daverman also claims as error the trial judge's failure to instruct the jury in accordance with an instruction it had submitted regarding an alleged tacit admission by Battle Creek Steel. It also claims as error several of the instructions given in

connection with Daverman's claim for contractual indemnity against Battle Creek Steel.

Our review of the record discloses no objection to these instructions. Daverman did object to the trial judge's failure to give certain instructions, but these instructions are designated only by number. Similarly, Daverman objected to the trial judge giving "Battle Creek's requested instruction No. 3". We have no way of knowing if the instructions complained of on appeal were those referred to in Daverman's objections. Under these circumstances, Daverman has not complied with the requirements of GCR 1963, 516.2[10] and the issues are not preserved for appellate review. *Larzelere v Farmington Twp,* 63 Mich App 465, 467-468; 234 NW2d 568 (1975). See also *Charles A Wright, Inc v F D Rich Co,* 354 F2d 710, 712-713 (CA 1, 1966).

V. *Other issues.*

Daverman claims that the trial judge erred in denying its motion for an adjournment and in severing Daverman's claim against Sofyanos from the case.

We find no error. The grant or denial of a motion to adjourn a trial is within the sound discretion of the trial court. *Johnkoski v Johnkoski,* 50 Mich App 542, 545-546; 213 NW2d 856 (1973). The trial judge's decision to proceed with the trial as scheduled was not an abuse of this discretion. This complex litigation involved numerous parties, none of whom had a claim against Sofyanos. The trial judge thus had to decide

---

[10] GCR 1963, 516.2 states:

"2. Objections. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider the verdict, *stating specifically the matter to which he objects and the grounds of his objection.* Opportunity shall be given to make the objection out of the hearing of the jury." (Emphasis added.)

whether to inconvenience all the other parties for purposes of retaining a party whose presence in the litigation was based solely on Daverman's claim of a right to indemnification, *if* Daverman was found liable. In light of the fact that trial was set for a date two weeks hence and that almost five years had passed since the incident giving rise to the litigation, the trial judge's decision to proceed to trial was proper. By virtue of the trial judge's severance order, Daverman could still have proceeded against Sofyanos if it desired.

Daverman's final contention relates to the amount of damages awarded. It claims that the trial court erred when it denied its motion for a *remittitur.*

This contention is without merit. A jury verdict will be set aside as excessive only if it has been shown that (1) the verdict was based on prejudice, caprice, passion, partiality, sympathy or kindred reasons or (2) the verdict is so great as to be shocking to the judicial conscience. *Cryderman v Soo Line R Co,* 78 Mich App 465, 477; 260 NW2d 135 (1977). There is no absolute standard by which damages are measured in personal injury cases. The triers of the facts did not exceed their sound judgment. *Watrous v Conor,* 266 Mich 397, 401; 254 NW 143 (1934).

Affirmed. Costs to appellees.