PEOPLE v TOLER

1. CRIMINAL LAW—RES GESTAE—EVIDENCE—WEAPONS.

A single question asked for the protection of the arresting officers, immediately after an arrest, pertaining to the whereabouts of a gun seen during a chase while the officers were concerned with their safety and not with building a case against defendant is part of the res gestae and therefore admissible as evidence at trial even though the same question would be improper if asked a sufficient time after the arrest to indicate the police were merely seeking additional evidence and that the question was not to protect the officers.

2. CRIMINAL LAW—WARNING OF RIGHTS—DUE PROCESS—WEAPONS.

The police at the scene of a crime are not obligated to advise a defendant of his constitutional rights before asking him where the weapon is immediately after an arrest, when they had observed him running with a pistol in his hand.

Appeal from Recorder's Court of Detroit, Frank G. Schemanske, J. Submitted Division 1 December 5, 1972, at Detroit. (Docket Nos. 13216, 13217.) Decided February 22, 1973.

Jerome Toler was convicted of assault with intent to commit rape, and of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *David H. Wol-*

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 708.
[2] 29 Am Jur 2d, Evidence § 529.

Necessity of informing suspect of rights under privilege against self-incrimination, prior to police interrogation, 10 ALR3d 1054.

*ock,* Assistant Prosecuting Attorney, for the people.

*Paul R. Jackman,* for defendant on appeal.

Before: LESINSKI, C. J., and J. H. GILLIS and PETERSON,* JJ.

LESINSKI, C. J. In two separate trials defendant was found guilty of assault with intent to commit rape, MCLA 750.85; MSA 28.280, and armed robbery, MCLA 750.529; MSA 28.797. He was sentenced to prison terms of from 9 to 10 years and from 10 to 20 years respectively. He appeals as of right.

While these appeals involve two separate convictions for different crimes, both appeals involve a single issue—the admissibility of a statement made at the time of defendant's arrest and before any *Miranda*[1] warnings were given. Since the substantive evidence of the crimes is not at issue, it will suffice to say that both crimes and the arrest took place within a 15- to 20-minute period on the evening of May 18, 1970. It should also be noted that the second crime (the armed robbery) took place about three blocks from the location of the first crime.

Facts pertinent to the issue on appeal are simply stated. Two Detroit police officers, Officer Ludlow and Officer Cochrane, while on patrol-car duty in the vicinity of Collingwood and Second Avenue in Detroit, observed a woman yelling. They also observed a man running—carrying a purse in his left hand and a pistol in his right hand. They drove the scout car onto the sidewalk and into the path of the fleeing man. The man ran into the car, fell

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694.

down and dropped the purse, jumped up and continued running. Officer Ludlow pursued the man on foot; ordered him to stop; and when he failed to do so, the officer fired two shots. The second of the two shots struck the man as he jumped over a fence enclosing a back yard of a house. The officer arrested defendant as he lay in the back yard, wounded in the arm, patted him down in a search for weapons, and handcuffed him. When the officer could not find the weapon, he asked defendant where the gun was. The officer testified that defendant answered that he had dropped the gun when he was shot. The gun was subsequently found by the fence. In both cases the gun was admitted into evidence, along with the testimony regarding defendant's statement. In both cases there was an objection as to the admissibility of defendant's statement. In both cases defendant took the stand and denied making any such statement.

There is a discrepancy in the testimony of the officer. At the first trial, on the armed-robbery charge, the officer testified that he patted down defendant, handcuffed him, took him back to the scout car, and then questioned him as to the whereabouts of the gun. The officer testified that defendant answered that he had dropped the gun when he jumped over the first fence. At the second trial, on the assault charge, the officer indicated he asked the question while defendant was still on the ground, after the pat-down and handcuffing. Defendant allegedly answered that he dropped the gun when he was shot.

*Miranda v Arizona,* 384 US 436, 444; 86 S Ct 1602, 1612; 16 L Ed 2d 694, 706 (1966), held:

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial

interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."

There is no dispute here concerning the issue of custody or lack of *Miranda* warnings. The defendant had been shot, handcuffed, and patted down for weapons; he was in custody. No warnings were given. However, there is a serious question as to whether this was the type of interrogation that *Miranda* was intended to cover.

Generally, the police cannot ask an arrested suspect any questions without first warning him of his constitutional rights. The case at bar is, however, a limited exception to this general rule. *People v Ramos,* 17 Mich App 515, 518 (1969), spoke to this issue in light of *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968):

"The police were not obligated to advise the defendant of his constitutional rights before making an effort to disarm him to prevent him from injuring the police officers or someone else present. Police officers are not required to take unnecessary risks in the performance of their duties."

In *Ramos* defendant's wife had told the police that defendant had a gun, with which he had threatened her. The police approached defendant in a bar and asked, "Where is the gun, John?" Defendant responded that it was in his belt. Both the conversation and the weapon were properly admitted at this trial for carrying a concealed weapon.

The facts in the case at bar are somewhat different. Here the police knew defendant had had

a gun because they saw it in his hand when he ran into the scout car. Defendant had not stopped when ordered to by the police but instead had tried to escape. Defendant was under arrest when questioned. Defendant was not as dangerous to the police when questioned as *Ramos* potentially was because defendant had already been wounded, handcuffed, and patted down for weapons before the question was asked. This difference of facts does not, however, necessarily dictate a different result.

*State v Lane,* 77 Wash 2d 860, 861–862; 467 P2d 304–306 (1970), is on point:

"Lane and a woman were standing in the apartment living room when the officers entered, identified themselves, and told Lane he was under arrest. One officer handcuffed him while the officer in charge, Detective Nelson commenced telling the accused his rights under *Miranda v Arizona.* Another officer interrupted, asking 'Do you have the gun?' Officer Nelson later testified before the jury that appellant Lane replied 'I don't have the gun. I wouldn't be dumb enough to have it here.' The jury subsequently found Lane guilty of armed robbery." (Citations omitted.)

The Court distinguished *Orozco v Texas,* 394 US 324; 89 S Ct 1095; 22 L Ed 2d 311 (1969) saying:

"There is no question but that both Lane and Orozco were in custody when they made statements in response to certain crucial questions asked by the arresting police officers. But, a number of factors distinguish the situation involved in *Orozco* from that in the instant case. Mr. Orozco was asked a series of questions apparently *designed to elicit incriminating information.* On the other hand, the question or questions asked of Lane were apparently for one reason only—the physical protection of the police. The police knew that Lane had an extensive past history of robbery and burglary; there is no indication that Orozco had any prior criminal

record. Lane was awake, dressed, and accompanied by another person; Orozco was in bed alone.

"The police had good reason to believe that Lane was armed and potentially dangerous even in the company of a number of officers with drawn guns. Our case of *State v Hayes,* 73 Wash 2d 568; 439 P2d 978 (1968), describes the type of danger which may have been anticipated by the police. In *Hayes* the accused had been arrested, handcuffed, and was being led to a paddywagon when he drew a concealed gun and fired at the officer. The United States Supreme Court continues to recognize the safety of the police officer as an important factor which must be considered in determining the reasonableness of the officer's actions. See *Terry v Ohio,* 392 US 1, 24; 88 S Ct 1868, 1881; 20 L Ed 2d 889, 908 (1968)."

The prosecution had argued here that this question is part of the res gestae and therefore admissible. This theory is helpful in conceptualizing the exception to *Miranda.* The theory is that even after defendant is arrested, a question pertaining to the whereabouts of a weapon seen during the chase is not interrogation; it is merely part of the on-going crime just as the flight and subsequent arrest were.

Here there was no series of questions aimed at gathering evidence to be used later against the defendant. There was only a single question probably aimed at protecting the officers. The objected-to matter pertained to the location of the gun, previously seen by the officers—the logical import of this is that the officers were concerned with their safety and not with building a case against defendant. Also the question was asked, at the latest, when the defendant arrived at the scout car— moments after the chase and arrest. Although defendant was wounded, therefore possibly less dangerous, the wound was only an upper-arm wound. We would note, however, that the question

would have been improper if asked a sufficient time after defendant's arrest to indicate that the police were merely seeking additional evidence.[2] This would place the question outside the area of the res gestae while indicating that the purpose of the question was not to protect the officers.

We find that the statement was properly admitted into evidence in both cases.

Affirmed.

All concurred.

---

[2] Any evidence that the police were merely seeking evidence in asking the question would be relevant—not just the time interval involved.