PEOPLE v COLE

Docket No. 65045. Decided July 13, 1981. On application by the people for leave to appeal the Supreme Court, in lieu of granting leave to appeal, reversed the judgment of the Court of Appeals and reinstated the defendant's conviction.

Nora M. Cole was convicted by a jury in Tuscola Circuit Court, Norman A. Baguley, J., of assault with intent to commit great bodily harm less than murder. The defendant testified that she shot the victim, who was her son-in-law, because she thought that he was going to get a gun and harm her or her family. The prosecutor attempted to impeach the defendant's testimony by cross-examining her on a prior statement, which she had given to the Michigan State Police two days after the assault, to the effect that she believed that her son-in-law was going to get a metal stake used to chain a dog. There was no objection by the defendant either to the prosecutor's cross-examination on the defendant's failure to mention the gun in her statement to the State Police or to the prosecutor's argument to the jury in this regard. The Court of Appeals, Beasley, P.J., and D. E. Holbrook, Jr., and Robinson, JJ., in an unpublished per curiam opinion, reversed the defendant's conviction on the ground that permitting a reference to the defendant's "nonutterance" about the gun indirectly restricted the exercise of her constitutional right to remain silent in the face of accusation (Docket No. 78-3401). The people apply for leave to appeal.

In a unanimous opinion, the Supreme Court held:

In this case the defendant had made a statement to the State Police which conflicted with her testimony at trial. Thus, the prosecutor was not attempting to use silence at the time of arrest to impeach an explanation subsequently given at trial. The Supreme Court of the United States has held recently that cross-examination that merely inquires into prior inconsistent statements makes no unfair use of silence, because a defendant who voluntarily speaks after receiving the warnings about waiving the constitutional right to remain silent has not been induced to remain silent. As to the subject matter of the statements, the defendant has not remained silent at all.

Therefore, the cross-examination of the defendant with regard to her prior inconsistent statement was permissible.

The judgment of the Court of Appeals is reversed, and the defendant's conviction is reinstated.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Artis M. Noel,* Prosecuting Attorney, and *Leonard J. Malinowski,* Assistant Attorney General, Prosecuting Attorneys Appellate Service, for the people.

*Forrest Walpole* for defendant.

PER CURIAM. The question posed in this case is whether the prosecutor's cross-examination of the defendant mandates reversal of her conviction in light of *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973). Because we are persuaded that the principle espoused in *Bobo* was not contravened by the prosecutor's cross-examination, we reinstate the defendant's conviction of assault with intent to do great bodily harm less than murder.

I

The defendant was charged with assault with intent to murder in connection with the shooting of her son-in-law. At trial, the defendant testified as follows on direct examination:

"*Q.* Did there come a point in time where you ask *[sic]* him to leave?

"*A.* Yes, sir, after he threatened me about a cannon and he also said that when he left my yard that he was going to Pontiac to kill other members of the family and so I asked him to leave.

"*Q.* Then what happened?

"*A.* He refused to and he moved as though, I'm

almost sure he was getting a gun and that's when I fired my gun.

"*Q.* What exactly was going on in your mind?

"*A.* I was thinking of the children into the house that was in danger and that's exactly—I did not intend to kill the man. I was trying to protect the children into the house that he had been so desperately trying to kill, how do I explain, just a minute. At that particular moment I only did what I thought I had to do to maintain the peace, so my family would not get hurt.

"*Q.* Were you afraid at that point in time that he was going to do harm to you and your family?

"*A.* Yes.

"*Q.* And did—was it at that time that he made a movement, is that the time that you thought he was going for a gun?

"*A.* Yes, I was positive of it.

"*Q.* Where did you think the gun was?

"*A.* In the back where he always hid it before.

"*Q.* Had you seen it there before on prior occasions?

"*A.* Yes.

"*Q.* Was it your intent to kill him at that time?

"*A.* No, sir.

"*Q.* Was it your intent to inflict great bodily harm to him?

"*A.* I was trying to shoot a warning shot, he moved over in front of it."

Thus the defendant's testimony on direct examination was that she thought her son-in-law was going to get a gun.

Two days after the assault occurred the defendant gave a statement to the Michigan State Police in which she alleged that at the time she shot she believed that her son-in-law was going to get a metal stake used to chain a dog. No mention of a gun was made.

The prosecutor explored this conflict on cross-examination:

"*Q.* Do you recall during that statement saying anything to Mr. Wolner concerning a gun?

"*A.* No, Ma'am.

"*Q.* Aside from this rifle?

"*A.* No, Ma'am.

"*Q.* Did you say anything to Detective Sergeant Wolner on June 20th about a gun or about Mr. Hmeidan having a gun?

"*A.* No, Ma'am.

"*Q.* You did not say anything to him on that day about Mr. Hmeidan having a gun?

"*A.* That's right.

"*Q.* Did you say anything to Mr. Wolner on that day about Mr. Hmeidan having a weapon?

"*A.* I said he was after a weapon.

"*Q.* You stated that you thought that he was after a weapon, is that correct?

"*A.* Yes.

"*Q.* And when you made that statement, when you made the statement to Detective Wolner on that date as to where you thought that weapon was located and what you thought that weapon was?

"*A.* Yes, Ma'am.

"*Q.* Do you recall what you said to Detective Wolner concerning that weapon it was that you thought Mr. Hmeidan was after?

"*A.* Yes, Ma'am.

"*Q.* All right, and what weapon was it?

"*A.* A steel dog stake."

The issue was further developed as follows:

"*Q.* And you told the State Police about this dog stake, this dog stake, whatever you call it?

"*A.* Yes, Ma'am.

"*Q.* You told them about that on June 20th.

"*A.* Yes, Ma'am.

"*Q.* But you didn't make any mention about a gun on that date, did you?

"*A.* No, Ma'am.

"*Q.* You didn't make any mention of seeing Basim Hmeidan with a gun?

"*A.* No, Ma'am, nothing.

"*Q.* You did think to say that you were worried about —the only reason you gave was that your worry was this dog stake that was over on the left-hand side of the porch, is that correct?

"*A.* No, that's not correct.

"*Q.* You didn't mention a gun, right?

"*A.* Right."

The defendant's failure to mention the gun was reiterated by the prosecutor in closing argument. There was no objection lodged by the defendant either to the prosecutor's cross-examination on this point or to her closing argument in this regard.

The Court of Appeals concluded that the above-quoted cross-examination of the defendant warranted reversal of the defendant's conviction under *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973).

## II

In *People v Bobo* we held that:

"We will not condone conduct which directly or indirectly restricts the exercise of the constitutional right to remain silent in the face of accusation. 'Nonutterances' are not statements. The fact that a witness did not make a statement may be shown only to contradict his assertion that he did." 390 Mich 355, 359.

In *People v Bobo* there was an attempt to introduce evidence that, when arrested, the defendant made no statement. Here the defendant had made a statement which conflicted with her testimony at trial. Thus here the prosecutor was not attempting

to use an accused's silence at the time of arrest to impeach an explanation subsequently given at trial.

The situation in the instant case is similar to one confronted by the United States Supreme Court in *Anderson v Charles,* 447 US 404; 100 S Ct 2180; 65 L Ed 2d 222 (1980). In that case, the defendant had indicated at the time of his arrest that he had stolen a car at a particular location. At trial, however, the defendant testified that he stole the car at a different location. The prosecutor cross-examined him at trial concerning this discrepancy. The United States Supreme Court found no infringement upon the defendant's exercise of his constitutional right to remain silent. The Court held:

> "*Doyle [v Ohio,* 426 US 610; 96 S Ct 2240; 49 L Ed 2d 91 (1976)] bars the use against a criminal defendant of silence maintained after receipt of governmental assurances. But *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving *Miranda [v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966)] warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all."

The parallel between the situation in *Anderson v Charles* and that present in the case at bar is manifest.

We conclude that the cross-examination of the defendant with regard to her prior inconsistent statement was permissible.

Accordingly, pursuant to GCR 1963, 853.2(4), in lieu of granting leave to appeal, we reverse the judgment of the Court of Appeals and we reinstate

defendant's conviction of assault with intent to do great bodily harm less than murder.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.