PEOPLE v O'BRIEN

Docket No. 44808. Submitted June 10, 1981, at Lansing.—Decided
February 17, 1982. Leave to appeal applied for.

Timothy E. O'Brien was convicted of first-degree murder in
Jackson Circuit Court, Charles J. Falahee, J. The defendant
appeals alleging that: (1) the trial court erred in admitting
evidence of statements that he made after he was in police
custody; (2) the trial court erred in admitting certain rebuttal
testimony regarding the defendant's silence when an officer
stated in the defendant's presence that a gun had been taken
from the defendant when he was captured; (3) there was not
sufficient evidence to support the magistrate's decision to bind
him over for trial; (4) the prosecutor's conduct deprived him of
a fair trial; (5) the trial court erred in admitting certain

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 21A Am Jur 2d, Criminal Law §§ 703, 788, 791 et seq.
  What constitutes "custodial interrogation" within rule of Miranda v
    Arizona requiring that suspect be informed of his federal consti-
    tutional rights before custodial interrogation. 31 ALR3d 565.
  Necessity of informing suspect of rights under privilege against self-
    incrimination, prior to police interrogation. 10 ALR3d 1054.
[2] 21A Am Jur 2d, Criminal Law §§ 785, 794.
[3] 5 Am Jur 2d, Appeal and Error § 778.
[5] 5 Am Jur 2d, Appeal and Error §§ 821, 838.
  21A Am Jur 2d, Criminal Law § 951.
[6] 21A Am Jur 2d, Criminal Law § 788 et seq.
[7] 21 Am Jur 2d, Criminal Law § 411 et seq.
[8] 29 Am Jur 2d, Evidence § 249.
[9] 5 Am Jur 2d, Appeal and Error § 772.
[10] 29 Am Jur 2d, Evidence § 769.
[11] 29 Am Jur 2d, Evidence §§ 378, 379.
  30 Am Jur 2d, Evidence § 1146.
  Evidence of trailing by dogs in criminal cases. 18 ALR3d 1221.
[12] 63 Am Jur 2d, Prosecuting Attorneys § 27.
  81 Am Jur 2d, Witnesses § 480.
[13] 5 Am Jur 2d, Appeal and Error §§ 843, 884.
  31 Am Jur 2d, Expert and Opinion Evidence § 31.
[14] 81 Am Jur 2d, Witnesses § 518.
[15] 5 Am Jur 2d, Appeal and Error § 948 et seq.

evidence that was irrelevant and prejudicial; (6) error requiring reversal occurred when the officer in charge of the case interjected irrelevant and prejudicial testimony while on the stand; (7) the trial court erred in admitting expert opinion testimony regarding the tracking of persons in dew for which an inadequate foundation had been laid; and (8) the people improperly impeached their own witness during redirect examination. *Held:*

1. It was error to admit evidence of the defendant's statement that he was alone when apprehended. However, such error was harmless since the defendant failed to object to such admission and the evidence against the defendant was overwhelming. The trial court did not err in holding that the defendant's statement regarding the "other guy" was voluntary and admissible into evidence. The police officer's routine question as to the defendant's name was not proscribed by *Miranda.* Although the trial court erred in allowing testimony regarding the defendant's statements about the other person's name and behavior made before the giving of *Miranda* warnings, such error does not require reversal because the information about the person was consistent with the defendant's theory of the case, was admissible as a valid tactic of defense counsel, and was not prejudicial to the defense. No error requiring reversal occurred from the admission of the investigating police officer's testimony regarding the defendant's statement about the gun found in the defendant's possession since the testimony was not responsive to the question asked and was favorable to the defendant's theory presented at trial. Although it was improper for the prosecuting attorney to elicit evidence of clearly prohibited statements made by the defendant after requesting counsel, the error under the facts of the case was harmless.

2. There was error in allowing the investigating officer to testify that the defendant never denied having possession of the gun when he was apprehended and that the defendant remained silent when an officer stated in the defendant's presence that a gun had been taken from the defendant when he was captured. However, in light of the trial court's cautionary instruction and the fact that the reference to defendant's silence was fleeting, the error was harmless.

3. The defendant's failure to object to the alleged insufficiency of evidence at the preliminary examination constitutes waiver of the right to raise the issue on appeal. Further, the evidence presented at the preliminary examination was sufficient to bind the defendant over for trial.

4. The prosecutor's conduct was not so egregious as to deny the defendant a fair trial.

5. The trial court did not abuse its discretion in admitting

the knife the defendant had in his possession into evidence. Manifest injustice did not result in the admission of evidence that the defendant had purchased two guns other than the one used in the commission of the felony because reference to the gun was fleeting and was not used in closing argument. The trial court abused its discretion in admitting into evidence a tape recording of the victim after he had been shot, but this error was harmless. The two cautionary instructions given the jury regarding the investigating officer's testimony concerning a route he believed the defendant followed through Jackson adequately avoided any prejudice. While testimony concerning the package of gum found in the defendant's possession was not relevant, the trial court's comments and defense counsel's closing argument placed this speculative testimony in its proper perspective. Since the windshield of the victim's car may have been helpful to the jurors in understanding technical testimony about conical points of entry and lead particles it was properly admitted into evidence. While the additional cracking of the windshield may have reduced the value of the exhibit, the failure to object on this ground and the trial court's giving of a cautionary instruction precludes a finding of error. The trial court did not err, under the facts of this case, in allowing the tracking dog handlers to testify as to their dogs' actions. This evidence was properly placed before the jury to be weighed by them as to its probative value.

6. While the prosecuting attorney should have prepared his chief witness more carefully, the witness's testimony did not interject error into the trial requiring reversal.

7. The trial court did not abuse its discretion in allowing the expert on dew information to offer his opinion testimony. The defendant's failure to object at trial to the witness's testimony on the ground that he was not qualified to give an opinion on the matter waives the issue on appeal. Furthermore, a proper foundation was laid to allow the witness to offer his opinion.

8. Since the defendant failed to object to the alleged impeachment by the people of their own witness during redirect examination, appellate review of this issue is waived absent a showing of manifest injustice. No showing of manifest injustice has been made.

Affirmed.

M. F. CAVANAGH, J., dissented. He believes that even if the majority were correct in their assessment of the character of the errors individually, the cumulative effect of the alleged

errors mandates reversal and a new trial. He would reverse the conviction.

OPINION OF THE COURT

1. CRIMINAL LAW — MIRANDA RULE — CUSTODIAL INTERROGATION.

The prosecution should not use evidence of a defendant's statements stemming from a custodial interrogation without demonstrating the use of procedural safeguards to secure the privilege against self-incrimination; "custodial" has been defined to include those statements where a defendant is deprived of significant freedom of action while interrogation has been held to be a practice that police know is reasonably likely to invoke a response that the prosecution may seek·to use at trial.

2. CRIMINAL LAW — EVIDENCE — VOLUNTARY STATEMENTS — MIRANDA RULE.

Evidence of statements that are volunteered by a defendant and a police officer's question prompted by a defendant's volunteered remark do not come within the purview of the *Miranda* rule and need not be suppressed at trial.

3. CRIMINAL LAW — RIGHT TO REMAIN SILENT.

Defense counsel's failure to object at trial will not preclude review of an alleged infringement of a defendant's constitutional right to remain silent; whether reversible error occurred in the absence of a timely objection should be determined by application of a two-part test: (1) whether the error was offensive to the maintenance of a sound judicial system; and (2) if not, whether that error was harmless beyond a reasonable doubt.

4. CRIMINAL LAW — MIRANDA RULE — POLICE OFFICERS.

Police officers are not required to take unreasonable risks in the performance of their duties; however, where the police opt to question a defendant before adivisng him of his *Miranda* rights and the questioning is investigatory and occurs in a police-dominated or police-compelled atmosphere, *Miranda* would seem to require that the defendant's responses may not be used in order to build a case against him.

5. APPEAL — WALKER HEARING — STATEMENTS — VOLUNTARINESS — INDEPENDENT DETERMINATION.

An appellate court, when reviewing a determination made at the conclusion of a *Walker* hearing, will examine the entire record and make an independent determination of the voluntariness of a defendant's statement; however, the decision of the trial court

will be reversed only where the reviewing court has a definite and firm conviction that an error was committed.

6. CRIMINAL LAW — DEFENDANT'S SILENCE.

A defendant's silence in the face of an accusatory statement made by the police should not be considered an admission of guilt by the defendant.

7. CRIMINAL LAW — PRELIMINARY EXAMINATIONS.

A failure by a criminal defendant to challenge a magistrate's decision prior to or during trial regarding the alleged insufficiency of evidence at the preliminary examination constitutes waiver of the right to raise the issue on appeal.

8. EVIDENCE — RELEVANT EVIDENCE.

Relevant evidence is evidence having any tendency to make the existence of any fact or consequence more probable or less probable than it would be without the evidence; relevant evidence is generally admissible and irrelevant evidence is not admissible; even if relevant, a trial court may choose to exclude evidence on the ground of prejudice, confusion, or waste of time (MRE 401-403).

9. EVIDENCE — ADMISSIBILITY.

The admissibility of evidence is a question that rests in the trial court's discretion and the exercise of the court's discretion will not be overturned on appeal unless there has been a clear abuse of that discretion; where there has not been an objection, the Court of Appeals should not review the admission of evidence absent a showing of manifest injustice.

10. EVIDENCE — REAL EVIDENCE — ADMISSIBILITY.

The article must be identified as what it is purported to be and shown to be connected with the crime or with the accused to lay a proper foundation for the admission of real evidence, although such identification is not required to be absolute or certain.

11. EVIDENCE — TRACKING DOGS.

Tracking-dog evidence is admissible in criminal cases where a proper foundation is laid which will show that: (1) the handler was qualified to use the dog; (2) the dog was trained and accurate in tracking humans; (3) the dog was placed on the trail where circumstances indicate the alleged guilty party to have been; and (4) the trail had not become so stale or contaminated as to be beyond the dog's competency to follow it;

tracking-dog evidence standing alone cannot support a criminal conviction.

12. PROSECUTING ATTORNEYS — POLICE OFFICERS — WITNESSES.

Prosecuting attorneys and police witnesses have a special duty not to venture into forbidden areas of testimony which may prejudice a defendant's case.

13. WITNESSES — EXPERTS — OPINION.

Failure to make an objection at trial to the opinion testimony of a witness on the ground that the witness was not qualified to give an opinion on the matter in question waives appellate review on that ground.

14. WITNESSES — IMPEACHMENT.

Failure to object to the allegedly improper impeachment of a witness precludes review of the testimony, absent manifest injustice.

DISSENT BY M. F. CAVANAGH, J.

15. CRIMINAL LAW — INDIVIDUAL ERRORS — CUMULATIVE EFFECT.·

Individual errors that may not require reversal of a defendant's conviction independently may require reversal due to their cumulative effect in a particular case.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Edward J. Grant,* Prosecuting Attorney, and *John L. Wildeboer,* Assistant Prosecuting Attorney, for the people.

*Mardi Crawford,* Assistant State Appellate Defender, and *Jennifer Pilette,* Research Assistant, for defendant on appeal.

Before: DANHOF, C. J., and M. F. CAVANAGH and D. R. FREEMAN,* JJ.

DANHOF, C. J. Following a jury trial, defendant was convicted of first-degree murder, MCL 750.316; MSA 28.548. He was sentenced to life imprisonment and now appeals as of right. Of the eight assertions of error raised by defendant, we con-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

clude that none, individually or collectively, necessitates reversal. Therefore, defendant's conviction is affirmed.

This case arose from the fatal shooting of Lt. William Nixon of the Jackson Police Department. The victim was discovered by police officers who had been dispatched to the intersection of Berry Road and US-127 in Jackson County in the early morning hours of April 27, 1978. Upon arriving at the scene, the officers observed Lt. Nixon's automobile parked behind a pickup truck attached to a Lo-boy trailer, carrying a bulldozer. Both doors of Lt. Nixon's automobile were open, as, apparently, were both doors of the pickup truck.[1] Lt. Nixon was found lying on the shoulder of the highway. Although he was still alive, he was unable to speak. Lt. Nixon died a short time later.

A helicopter was dispatched to the scene, as were tracking dogs and their handlers. A search of the area began. Defendant was apprehended in a swamp, east of the highway.

Following a preliminary examination, defendant was bound over on two counts of first-degree murder. The magistrate found that there was sufficient evidence to permit a trier of fact to find premeditation and deliberation. Defendant was ultimately convicted under this theory. The magistrate also found that a felony-murder charge could be supported because there was evidence that the murder was committed in the course of a larceny over the sum of $100.

Due to the publicity surrounding this case, an order for a change of venue was entered on November 8, 1978, and the trial was held in Midland, Michigan.

---

[1] We note that conflicting testimony was given on this point at the trial and at the *Walker* hearing.

Defendant's trial spanned a two-week period, during which numerous witnesses testified. The prosecution's theory of the case was that defendant had stolen a bulldozer and was traveling along the highway when he was pulled over by Lt. Nixon. The prosecution theorized that in order to avoid capture the defendant murdered Lt. Nixon.

Defendant's theory of the case was that he had been hired by a man named "Larry" to drive the pickup truck and bulldozer. When they were stopped by Lt. Nixon, Larry pulled a gun and shot the officer. Defendant maintained that he did not have any knowledge of the gun or of any plan to shoot the officer. Defendant asserted that after shooting Lt. Nixon, Larry escaped from the scene.

After the defendant's conviction, a claim of appeal was filed. This Court remanded for a *Walker (People v Walker [On Rehearing]*, 374 Mich 331; 132 NW2d 87 [1965]) hearing, which was held on June 10, 1980.

Defendant raises numerous issues on appeal. Due to the extremely complicated nature of this case and the voluminous evidence produced at trial, significant facts will be noted only as they relate to the various issues.

I

This issue concerns the admissibility of evidence of various statements that the defendant made to the police after being taken into custody. In order to put this issue in its proper context, it is necessary to briefly outline some of the facts surrounding defendant's apprehension.

After arriving at the scene, troopers William Flowers and Bert Lardie, tracking dog handlers, went to investigate a green object spotted in a

swamp. When trooper Flowers approached the object he could see that it was a man (i.e., defendant) and turned his dog loose. The dog jumped on defendant, who was face down in the water. Trooper Flowers handcuffed one of the defendant's hands. A struggle ensued, during which a gun was taken from the defendant's belt. Other officers arrived, and both handcuffs were put on the defendant.

Officer James Conant testified that during the struggle he struck defendant on the side of the face and on the back with the butt of his shotgun. No one else hit the defendant during the struggle.

Defendant was removed from the swamp and taken across several fields and fences. He was returned to the highway and surrendered to the custody of Sgt. Darwin Nystrom. The defendant was patted down for weapons. After being placed in a police vehicle he was given his *Miranda* warnings *(Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 [1966]) for the first time. Defendant stated he would like to contact an attorney. He was subsequently transported to the police post.

As noted above, a *Walker* hearing was held after defendant's conviction to determine the admissibility of evidence of various statements that he had made to police. At the hearing, the prosecutor indicated that no pretrial hearing was held because he and defense counsel had agreed not to use a full statement made by the defendant after he was advised of his rights and requested an attorney. At the conclusion of the *Walker* hearing, the trial court ruled that statements elicited from the defendant before the *Miranda* warnings were

given were not the product of an interrogation, and were admissible. The trial court found that the statements made after *Miranda* warnings were given were not admissible but observed that they were not used in the prosecution's case in chief. The court found that no error occurred. On appeal, the defendant asserts that various statements made by him after he was taken into custody were improperly admitted into evidence because they were involuntary and were elicited in contravention of the requirements of *Miranda.*

In *Miranda v Arizona, supra,* the Supreme Court held that the prosecution may not use statements stemming from a custodial interrogation without demonstrating the use of procedural safeguards to secure the privilege against self-incrimination. "Custodial" has been defined to include those statements made where a defendant is deprived of significant freedom of action. *Orozco v Texas,* 394 US 324; 89 S Ct 1095; 22 L Ed 2d 311 (1969). Interrogation has been held to be a practice that police know is reasonably likely to invoke a response that the prosecution may seek to use at trial. *Rhode Island v Innis,* 446 US 291; 100 S Ct 1682; 64 L Ed 2d 297 (1980). *Miranda* also precludes the prosecution from proving defendant's guilt with statements made by the defendant while in custody, prior to obtaining or effectively waiving assistance of counsel. *Harris v New York,* 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971), *Michigan v Tucker,* 417 US 433; 94 S Ct 2357; 41 L Ed 2d 182 (1974). It should also be noted that statements made in violation of *Miranda* may, under certain circumstances, be used for impeachment purposes. *Harris, supra.*

Statements that are volunteered by a defendant

need not be suppressed at trial, even if the volunteered remark was not preceded by *Miranda* warnings. *Miranda, supra,* 478, *People v Germain,* 91 Mich App 154; 284 NW2d 260 (1979), *rev'd on other grounds* 411 Mich 858 (1981). A police officer's question, prompted by a defendant's volunteered remark, falls under the same exception. *People v Leffew,* 58 Mich App 533; 228 NW2d 449 (1975).

Defense counsel's failure to object will not preclude review of an alleged infringement of a defendant's constitutional right to remain silent. Whether reversible error occurred, in the absence of a timely objection, is determined by application of a two-part test: (1) whether the error was offensive to the maintenance of a sound judicial system; and, (2) if not, whether that error was harmless beyond a reasonable doubt. See *People v Swan,* 56 Mich App 22; 223 NW2d 346 (1974).

On appeal, defendant asserts that error occurred when evidence of statements that he made after he was in custody was admitted. We will address only those arguments raised by defendant which merit discussion.

*A.* Police witnesses testified, without objection, that immediately after defendant's seizure in the swamp, defendant was asked if anyone was with him. Defendant replied, "I am alone." In its opinion, rendered after the *Walker* hearing, the trial court held that the police had elicited this statement for their own protection and not to incriminate the defendant. The trial court reasoned that under these circumstances no *Miranda* warnings were required. In reaching this conclusion, the trial court relied on what it termed the "emer-

gency exception" found in *People v Toler,* 45 Mich
App 156; 206 NW2d 253 (1973), and *People v
Ramos,* 17 Mich App 515; 170 NW2d 189 (1969).
See also *People v Coppernol,* 59 Mich App 745; 229
NW2d 913 (1975). On appeal, defendant argues
that the *Toler* and *Ramos* cases were wrongly
decided.

In *Ramos,* defendant's wife told police that her
husband had threatened her, that he had a gun,
and that he was going to a specific bar. Police
went to that bar and asked defendant where the
gun was. Defendant replied that it was in his belt.
Defendant's statement and the gun were held
admissible. Citing *Terry v Ohio,* 392 US 1; 88 S Ct
1868; 20 L Ed 2d 889 (1968), this Court found that
the police had no obligation to warn defendant of
his constitutional rights before taking the gun
because they had reason to believe that defendant
was armed and dangerous.

In *Toler,* this Court again found an exception to
*Miranda* when police asked a question that was
based on their concern for safety. There, defendant
was seen carrying a gun and a purse as he ran
from a screaming woman. Police gave chase, or-
dered him to stop and shot him in the arm when
he failed to do so. Defendant was handcuffed and
when police could not find the gun they asked the
defendant where it was. He answered that he
dropped it when he was shot. The gun was subse-
quently found. Evidence of the defendant's state-
ment was held admissible.

We believe that the result arrived at in *Ramos*
is correct. At the time the police asked the defen-
dant in *Ramos* where his gun was, they had only
defendant's wife's information on which to rely.

They were obligated to act cautiously to determine if a crime had, in fact, been committed. At that point, police were not engaging in "custodial interrogation", so *Miranda* would not be applicable. We note that the holding in *Ramos* is similar to that arrived at in other jurisdictions. See, *e.g., United States v Harris,* 611 F2d 170 (CA 6, 1979), *People v Huffman,* 41 NY2d 29; 390 NYS2d 843; 359 NE2d 353 (1976).

Although we conclude that the *Ramos* case reached the correct result, we are troubled by the holding in *Toler.* In *Toler,* the defendant was in custody at the time of questioning and there was no doubt that a crime had been committed. It would appear that the police questioning was done for a dual purpose—for their own safety and to elicit incriminating information. Arguably, under *Miranda,* the defendant's responses were inadmissible.

We do not mean to suggest that police do not have the right, in order to protect themselves, to question a defendant about a weapon or an accomplice prior to giving him his *Miranda* warnings. Police officers are not required to take unreasonable risks in the performance of their duties. However, where the police opt to question a defendant, before advising him of his *Miranda* rights, and the questioning is investigatory and occurs in a police-dominated or police-compelled atmosphere, *Miranda* would seem to require that the defendant's responses may not be used in order to build a case against him. See *People v Hooper,* 85 Mich App 217, 219; 270 NW2d 518 (1978).

The facts of the instant case clearly indicate that the defendant made the statement that he

was alone during a "custodial interrogation" while in a police-dominated atmosphere. Police, using tracking dogs and a search helicopter, found the defendant hiding in a swamp near the scene of a killing. Police seized the defendant, disarmed him and handcuffed him. Several officers were present and a search helicopter was hovering above, casting a bright light on the defendant. Defendant was clearly not free to leave. The information sought by the police went both to protect the police and investigate a crime. Under these facts, we find that it was error to admit evidence of the defendant's statement that he was alone into evidence.

However, we also find that this error was harmless. Defendant took the stand and testified that, in answering the question as to whether he was alone, he was indicating that Larry was not with him in the swamp. Furthermore, in cross-examination of a police officer, defense counsel elicited that the police officers did not know whether defendant's statement about being alone meant he was merely alone in the swamp or that he had been alone the entire night. In light of the defendant's failure to object and the overwhelming evidence against the defendant, admission of defendant's statement that he was alone does not require reversal.

*B.* Without objection, a police officer testified that while being led out of the swamp defendant inquired whether the "other guy" had been caught. In response to this question the police inquired as to what other guy, and defendant then described a person. Following the *Walker* hearing, the trial court held that defendant initiated the conversation and that it was not in response to any questioning by police officers. Under the au-

thority of *Laffew, supra,* the trial court held that the requirements of *Miranda* had not been violated.

On appeal, defendant argues that the trial court erred in finding defendant's statement volunteered. We disagree. Although police officers gave somewhat conflicting testimony at the *Walker* hearing as to whether the statement was volunteered, the form of defendant's statement indicates that it was not responsive. Under the facts of this case, we do not find that the trial court erred in finding that the statement was voluntary and admissible.

*C.* At trial, without objection, Sgt. Nystrom testified that before he gave the defendant *Miranda* warnings, he inquired as to the defendant's identity. Defendant stated that he was "Richard O'Brien". Defendant was then informed that an Ohio driver's license for a Timothy O'Brien had been found at the scene. Defendant then stated that he was Timothy and that Richard was his brother. Defendant explained that he and his brother used each other's names.

Defendant claims that when he was asked his name he was in police custody and that, therefore, this question was in the nature of a custodial interrogation in violation of *Miranda.* We reject this argument. Under the facts of this case, we find that Sgt. Nystrom's routine question as to defendant's name is not proscribed by *Miranda.* See *State v Landrum,* 112 Ariz 555; 544 P2d 664 (1976), *Holt v State,* 383 NE2d 467 (Ind App, 1978), *Grimes v State,* 44 Md App 580; 409 A2d 767, *rev'd on other grounds* 429 A2d 228 (1980), *United States ex rel Hines v LaVallee,* 521 F2d 1109 (CA

2, 1975), *cert den* 423 US 1090; 96 S Ct 884; 47 L
Ed 2d 101 (1976). But, see *People v Mann,* 49 Mich
App 454, 460-461; 212 NW2d 282 (1973).

*D.* After the defendant gave his correct name,
Sgt. Nystrom asked him if anyone else was with
him. Sgt. Nystrom testified that defendant told
him there was another person named Larry and
that he didn't know Larry's last name. In response
to another question, the defendant stated that he
had last seen Larry running west across US-127
from the pickup truck. No objection was made to
this testimony.

In the absence of *Miranda* warnings it was error
to admit this testimony into evidence. However,
the information about Larry was consistent with
defendant's theory of the case, was admissible as a
valid tactic of defense counsel, and was not preju-
dicial to the defense.[2] No reversible error occurred
in its admission.

*E.* Sgt. Nystrom was asked what, if anything, he
did with defendant at the State Police Post. Sgt.
Nystrom replied, without objection, that he
searched defendant and found four live rounds of
ammunition in the defendant's pocket. Sgt. Nys-
trom went on to testify that defendant had told
him, at the scene, that he hadn't reloaded the gun,
that he hadn't opened the gun's cylinder, and that
he hadn't touched the gun since Larry handed it
to him. On appeal, defendant argues that this

---

[2] We note that admission of this testimony was highly favorable to
the defense. A valid trial tactic may have existed in allowing into
evidence, without objection, all of the statements made by defendant
prior to receiving his *Miranda* warnings, in order to assure that
defendant's statements about Larry were admitted. These pre-*Mi-
randa* statements, along with defendant's own testimony at trial, were
the only evidence that a Larry existed.

testimony involved investigative questioning. While this is true, Sgt. Nystrom's answer was not responsive to the question asked and was favorable to defendant's theory presented at trial. No reversible error occurred in its admission.

*F.* The parties agreed before trial that evidence of statements made after defendant was given his *Miranda* warnings and after he had requested an attorney would not be admitted at trial in the prosecution's case in chief. However, during direct examination of Sgt. Nystrom, the prosecution asked whether business route US-127 was well marked through Jackson. Sgt. Nystrom replied that it was and went on to state that he had a conversation with defendant at the police post about the route out of Jackson. During cross-examination, Sgt. Nystrom volunteered information about defendant's statement and defense counsel inquired about the description that defendant gave of Larry. On redirect examination, the prosecution asked Sgt. Nystrom what the defendant had said about the route through Jackson. There was no objection, based on *Miranda,* to this testimony. At the conclusion of the *Walker* hearing, the trial court correctly found that no statement made by defendant after he requested a lawyer was admissible in the prosecution's case in chief. However, the trial court erred in finding that none of defendant's statements made after he requested a lawyer were used in the prosecution's case in chief. We must now decide if the use of defendant's statements constitutes reversible error.

Although it was improper for the prosecution to elicit clearly inadmissible statements made by the defendant after requesting counsel, we find that the error, under the facts of this case, was harm-

less. Four prosecution witnesses clearly established defendant's presence in the City of Jackson at about 1 a.m. on April 27, 1978. Sgt. Nystrom's testimony about defendant's statements that placed him in Jackson did not contradict defendant any more effectively than these witnesses had done. Moreover, defendant's statements could have been used for impeachment purposes. *Harris, supra.* The statements were made at the police station after defendant was given coffee and a blanket to help warm him. The interrogation was not overly long. Defendant's statements were not involuntary and could have been used for impeachment purposes.

*G.* Defendant argues that some of his statements should be suppressed for all purposes because they were coerced and involuntary. See *New Jersey v Portash,* 440 US 450; 99 S Ct 1292; 59 L Ed 2d 501 (1979), *Mincey v Arizona,* 437 US 385; 98 S Ct 2408; 57 L Ed 2d 290 (1978). This Court must examine the entire record and make an independent determination of voluntariness. *People v Scanlon,* 74 Mich App 186; 253 NW2d 704 (1977). Normally, a lower court's determination of voluntariness should be reversed only when this Court is left with a definite and firm conviction that error has been committed. *People v McGillen #1,* 392 Mich 251; 220 NW2d 677 (1974). In this case, however, the trial court did not discuss the voluntariness of some of defendant's statements because it held that *Miranda* warnings were not required. Since an independent review is required, rather than remanding for further factfinding on this issue, we have made a review of the entire record and find that the complained-of statements were not coerced.

## II

During the rebuttal portion of the prosecution's case, the prosecution elicited, during re-examination of Sgt. Nystrom, that defendant never denied having possession of the gun when he was apprehended and that defendant remained silent when an officer stated, in defendant's presence, that a gun had been taken from defendant when he was captured. No objection was made to this testimony. However, the trial court cautioned the jury *sua sponte* that defendant had the right not to say anything.

We agree with defendant that the complained-of rebuttal testimony violated the rule announced in *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973), and in MRE 802(d)(2)(B). Compare, *People v Cole,* 411 Mich 483; 307 NW2d 687 (1981). Defendant's silence in the face of an accusatory statement by police cannot be considered an admission of guilt. However, in light of the trial court's cautionary instruction and the fact that the reference to defendant's silence was fleeting, we find the error to be harmless. See *People v Dixon,* 84 Mich App 675; 270 NW2d 488 (1978).

## III

Defendant asserts that there was not sufficient evidence to support the magistrate's decision to bind him over for trial.

Defendant did not challenge the magistrate's decision at the trial court level. This failure to object, prior to or during trial, to the alleged insufficiency of evidence at the preliminary examination constitutes waiver of the right to raise this

issue on appeal. *People v Carter,* 101 Mich App
529; 300 NW2d 624 (1980), *People v Miniear,* 8
Mich App 591; 155 NW2d 222 (1967), *lv den* 380
Mich 758 (1968), *People v Willis,* 1 Mich App 428;
136 NW2d 723 (1965), *lv den* 377 Mich 693 (1965).
In any case, we have reviewed the evidence pre-
sented at the preliminary examination and find
that it was sufficient to bind defendant over for
trial.

## IV

Defendant asserts that the prosecutor's conduct
deprived him of a fair trial. In support of this
contention he raises a number of assignments of
error.

We agree with defendant that some error did
occur at the trial. For instance, it was improper to
ask questions about defendant's relationship with
his girlfriend.[3] See *People v Bouchee,* 400 Mich
253, 268; 253 NW2d 626 (1977). However, we also
note that in a number of instances statements
made by the prosecution were not followed by
objections by defense counsel. In other instances
when rulings were requested they were made by
the court. Furthermore, some of the alleged errors
raised on appeal are simply without merit. For
example, it was perfectly legitimate for the prose-
cutor to elicit opinion testimony from police offi-
cers, such as the helicopter pilot, regarding the
number of persons involved in the crime.

We have carefully reviewed the record and are
not convinced that the prosecutor's conduct was so

[3] The first time reference was made to defendant's girlfriend no
objection was made. The second reference was met by an objection to
questions about "marital status". The objection was sustained and no
further reference was made to this testimony.

egregious as to deny defendant a fair trial. See *People v DeLano,* 318 Mich 557, 568-569; 28 NW2d 909 (1947).

## V

In this issue defendant challenges the admission of certain evidence. He argues that the evidence was irrelevant and prejudicial and should not have been submitted to the jury.

Relevant evidence is "evidence having any tendency to make the existence of any fact of consequence more probable or less probable than it would be without the evidence". MRE 401. Relevant evidence is generally admissible; irrelevant evidence is not. MRE 402. Even if relevant, a trial court may choose to exclude evidence on the ground of prejudice, confusion, or waste of time. MRE 403. The admissibility of evidence is a question that rests in the trial court's discretion and the exercise of the court's discretion will not be overturned unless there has been a clear abuse of that discretion. *People v Strickland,* 78 Mich App 40, 54; 259 NW2d 232 (1977). Where there has not been an objection, this Court cannot review the admission of evidence absent a showing of manifest injustice. *People v Sands,* 82 Mich App 25, 35-36; 266 NW2d 652 (1978).

We will address defendant's claims of error in the same order as raised by defendant.

*A.* When defendant was arrested a knife was found in his possession. Before trial, defendant moved to keep the knife out of evidence arguing that it had no connection with the case. Defendant later objected to its admission into evidence.

To lay a proper foundation for the admission of real evidence, the article must be identified as what it is purported to be and shown to be connected with the crime or with the accused, although such identification is not required to be absolute or certain. *People v Rojem,* 99 Mich App 452, 458; 297 NW2d 698 (1980). In this case, there is no question as to the identification of the knife. Defendant argues that its admission into evidence was highly prejudicial and that his mere possession of the knife was inadequate to make the knife relevant.

We disagree. The fact that defendant undertook to drive a truck for a presumably unlawful purpose and did so while armed with two weapons (a gun and a knife) was relevant in determining premeditation and deliberation. Defendant's possession of the knife supports the prosecution's theory that defendant intended to use a weapon, if necessary, to carry out his plan for the night. The trial court did not abuse its discretion in admitting this evidence.

*B.* On direct examination, Sgt. Nystrom stated that when he searched defendant he found, among other things, two bills of sale for guns. The prosecutor interrupted this testimony, stating, "You don't have to go into all that stuff". No objection was made to this testimony.

Evidence that defendant had purchased two guns (other than the one used in the commission of the felony) was, arguably, irrelevant and not probative as to whether defendant purchased or fired the murder weapon. However, the reference to these bills of sale was fleeting and this information was not used in closing argument. Little

prejudice occurred and we do not find any manifest injustice.

C. As part of standard police procedure, a recording of Lt. Nixon's communications to emergency dispatch was made. This tape included a call from Lt. Nixon, asking for help and stating that he had been shot twice. Defense counsel objected to its admission on the grounds that it was cumulative and that it was more prejudicial than probative. The prosecution argued that the tape was probative because it showed the number of times Lt. Nixon had been shot, which was relevant in determining whether the killing was premeditated. The prosecution also argued that the tape showed how much time elapsed during the incident. The trial court allowed the tape into evidence noting that it contained a "startling statement"—hollering by the victim after he had been shot.

Admission of this tape could not be justified on the ground that it established the number of times the victim was shot as this was not a matter in issue. Moreover, the number of times Lt. Nixon had been shot was shown by the testimony of the pathologist.

Although the tape may have had some probative value in establishing how much time elapsed during the incident, this value was greatly lessened in that a portion of the tape was deleted when it was played to the jury, and it is not certain how accurate the time frame given to them actually was. Moreover, the jurors had no way of telling when the victim first made radio contact with emergency dispatch. If initial contact was made well before the defendant was stopped, this time frame could have been greatly expanded.

Given these considerations, we find that the probative value of the tape was outweighed by its prejudicial effect and that the trial court abused its discretion in admitting the tape, or at least that portion containing the "startling statement", into evidence. However, we also conclude that this error was harmless.

*D.* On three separate occasions, Sgt. Nystrom attempted to describe a route he believed defendant followed through Jackson. Each time this testimony was given, the defendant objected, and the objection was sustained. Cautionary instructions were given on two occasions.

Defendant did not request that any of the testimony be stricken. In the absence of any further requests at the time, the two cautionary instructions given the jury adequately avoided any prejudice.

*E.* A package of Wrigley's spearmint gum, and some change, were found on defendant after his arrest. These items were admitted into evidence. Sgt. Nystrom testified that as part of his investigation he located a gas station with a gum machine that took quarters and gave a nickel in change. This machine distributed the same type of gum as that found on defendant. Defense counsel objected to this testimony on the grounds of irrelevancy and the trial court cautioned the prosecutor not to put speculative testimony before the jury.

While testimony concerning the package of gum was not relevant, defense counsel allowed much of this testimony into the record by failing to object at the outset. The trial court's comments and

defense counsel's closing argument placed this
speculative testimony in its proper perspective.

*F.* Defense counsel sought to bar admission of
the windshield of the victim's vehicle, arguing that
it would be more prejudicial than probative. The
prosecution argued that the windshield was neces-
sary to show where the shots had been fired in
relation to the vehicle.

The trial court acknowledged that the wind-
shield had some prejudicial effect, but reasoned
that this was outweighed by its probative value.
The court also noted that the windshield had
suffered some additional breakage as it was re-
moved from the vehicle and as it was carried back
and forth to court. The windshield was admitted
into evidence with the understanding that it had
cracked while being removed from the vehicle.

Since the windshield may have been helpful to
the jurors in understanding technical testimony
about conical points of entry and lead particles, it
was properly admitted into evidence. While the
additional cracking of the windshield may have
reduced the value of the exhibit, the failure to
object on this ground and the trial court's giving
*sua sponte* a cautionary instruction precludes a
finding of error.

*G.* Along with the helicopter, tracking dogs were
dispatched to the scene of the murder. After a
proper foundation had been laid for admission of
tracking-dog evidence, see *People v Harper,* 43
Mich App 500, 508; 204 NW2d 263 (1972), testi-
mony was elicited that the dogs had picked up one
scent at the scene—that of defendant's. The prose-
cution then sought to introduce testimony that the

dogs had failed to find a second scent. Defense counsel objected.

An offer of proof was made and trooper Patrick Darrow, a dog handler, testified that his dog, Zeke, could track one scent and return and track another. Darrow admitted that tracking on cement, such as a highway, could be difficult and that his dog had missed scents in the past. Darrow stated that two other dog handlers had attempted to track on the west side of highway US-127, but their hounds, despite dogged efforts, did not pick up a scent.

The trial judge ruled that although he would not allow dog handlers to testify that there was no scent on the west side of the highway, he would allow testimony as to the actions of the dogs. The court reasoned that it was for the jurors to draw their own conclusions after hearing about the dogs' actions.

Subsequently, two dog handlers, who had been present at the scene with their dogs, testified as to their dogs' actions, and the dogs' inability to pick up a scent on the west side of the highway. These troopers admitted that they knew of, or assumed that there had been, instances where their dogs had missed picking up a scent in the past.

Defendant contends that since the dogs were not placed on the track, evidence of their inability to find a track should not have been admitted because no proper foundation had been laid.

Tracking dog evidence is recognized as admissible only under the limited conditions discussed in *Harper, supra,* and only when other corroborating

evidence is presented. *People v McPherson,* 85 Mich App 341, 346; 271 NW2d 228 (1978). This limitation has been found necessary, in part, because of the variable skills of dogs and the likelihood that a jury may give more weight to such evidence than it is entitled to. Anno: *Evidence of Trailing by Dogs in Criminal Cases,* 18 ALR3d 1221.

Despite the potential prejudice that may flow from tracking-dog evidence, we do not think that the court erred, under the facts of this case, in allowing the dog handlers to testify as to their dogs' actions. This evidence was properly placed before the jury to be weighed by them as to its probative value.

## VI

Defendant claims that reversible error occurred when the officer in charge, Sgt. Nystrom, interjected irrelevant and prejudicial testimony while on the stand.

We have recognized on prior occasions that prosecutors and police witnesses have a special duty not to venture into forbidden areas of testimony which may prejudice a defendant's case. Thus, for example, where a police officer improperly refers to the fact that a defendant has been convicted or charged with a crime, reversal may be required. *People v McCarver (On Remand),* 87 Mich App 12; 273 NW2d 570 (1978), *People v McCartney,* 46 Mich App 691; 208 NW2d 547 (1973).

In the instant case, while the prosecutor should have more carefully prepared his chief witness, we

cannot say that Sgt. Nystrom's testimony inter-
jected reversible error into the trial.

## VII

Danny King, a helicopter co-pilot and observer,
testified about spotting the defendant in a swamp
and about the search for Larry on the west side of
highway US-127. King stated that he had been
working as a spotter for ten months prior to trial.
He had prior experience in helicopter tracking of
persons fleeing on foot and had been trained in the
subject at the police academy and in the army.
There was no indication that King had formal
training in weather patterns.

On direct examination, King was asked if dew
would be likely to settle on the swampy area east
of US-127, if anything would obstruct dew from
settling on the west side of the highway, and how
long a track would remain in dew. King observed
that dew did not settle on water, that the west side
of the highway was an excellent place for dew to
settle, and that a track would remain in dew until
the dew lifted. King offered his opinion that no one
crossed along the west side of the highway based
on the fact that he did not observe a track in the
dew in that area. The only objection to this testi-
mony was that the prosecution was leading the
witness. On appeal, defendant argues that King
was offering expert opinion for which an inade-
quate foundation had been laid. Defendant's fail-
ure to object, at trial, to King's testimony on the
ground that he was not qualified to give an opin-
ion on the matter waives this issue on appeal.
*Tiffany v Christman Co,* 93 Mich App 267, 282; 287
NW2d 199 (1979). Furthermore, we find that a
proper foundation was laid to allow King to offer

his opinion. His observations about dew formation were in the realm of knowledge of any layman. King's conclusion that no human had passed across the west side of the highway was well within the scope of his expertise. MRE 702. The trial court did not abuse its discretion in allowing King to offer his opinion testimony. *People v Hernandez,* 84 Mich App 1, 18; 269 NW2d 322 (1978).

## VIII

The final issue raised by defendant concerns whether the people improperly impeached their own witness during redirect examination.

Since defendant failed to object to the impeachment at trial, appellate review of this issue is waived absent a showing of manifest injustice. *People v Alexander,* 76 Mich App 71, 79; 255 NW2d 774 (1977). Assuming that there was error in the admission of this testimony, no showing of manifest injustice has been made. This case is distinguishable from *People v White,* 401 Mich 482; 257 NW2d 912 (1977).

Affirmed.

D. R. FREEMAN, J., concurred.

M. F. CAVANAGH, J. *(dissenting).* I dissent from the majority's conclusion that the numerous errors which occurred during the trial below do not mandate reversal and a new trial.

Statements made before *Miranda* warnings were given were the product of custodial interrogation and should have been suppressed. Reference to statements that were conceded to be inadmissible thereafter was improper and constituted reversible error. The elicitation of information regarding the

defendant's silence in the face of an accusation constituted reversible error. The overzealousness of the prosecutor and his chief witness denied defendant a fair trial and mandates reversal. Error also occurred in the admission of the police dispatch tape. I am also persuaded that error occurred in allowing the jury to draw negative inferences from the testimony of the dog handlers as to the inability of their dogs to pick up a scent.

Even if my brothers are deemed to be correct in their assessment of the character of the foregoing errors individually, I am still persuaded that the cumulative effect of the complained-of errors mandates reversal and a new trial.