# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAZINE ANNDACOLE RAND,

        Defendant-Appellant.

UNPUBLISHED
January 20, 2015

No. 318082
Saginaw Circuit Court
LC No. 13-038708-FH

Before: MURPHY, P.J., and METER and SERVITTO, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of carrying a concealed weapon, MCL 750.227; carrying a dangerous weapon with unlawful intent, MCL 750.226; possession of a firearm during the commission of a felony (felony firearm), MCL 750.227b; and possession of marijuana, MCL 333.7403(2)(d). Defendant was sentenced to concurrent prison terms of 23 months to five years for carrying a concealed weapon and carrying a dangerous weapon with unlawful intent, a consecutive two-year term for felony firearm, and 365 days in jail for possession of marijuana. She appeals as of right. We affirm.

Defendant's convictions arose out of a traffic stop. While the car in which defendant was the front seat passenger was being stopped for a broken taillight, defendant got out of the car and attempted to walk away. State troopers on the scene believed she was attempting to flee and stopped her. Defendant was found with a marijuana cigarette behind her ear and a firearm on her person. After defendant was handcuffed and placed in the patrol car, in which Trooper Joseph Whited was processing the names of the car's occupants in the LEIN computer, defendant told the trooper that she was not sure if she should say anything, to which he responded that "any cooperation will look good and it's better to be truthful." She then stated that she got the firearm from the two other occupants of the vehicle. Trooper Whited then left the car and conversed with Trooper Daniel Stickel, who was searching the vehicle, and Trooper Whited proceeded to read defendant her rights under *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), which she waived before she made any more statements. She later told the police that the driver of the vehicle gave her the gun and she and the driver intended to "shoot up" some individuals who wanted to fight them.

-1-

Defendant moved to suppress her statements and a *Walker*[1] hearing was held. Defendant testified that she was told by the police that if she cooperated she would face only a probation violation. Trooper Whited testified that he read defendant her *Miranda* rights before any questioning occurred and defendant volunteered the initial remarks. Trooper Stickel testified that he made no offer of leniency to defendant but said that he could refer her case to "BAYANET," which could potentially get her a lighter sentence, but that the sentencing decision was not up to him.

The trial court ruled defendant's statements admissible, having been voluntarily and properly given. The court noted that defendant understood her rights and that she was familiar with the law due to prior experience with law enforcement. At trial, defendant contested only the charges of carrying a dangerous weapon with unlawful intent and felony firearm and admitted in her testimony that she was guilty of carrying a concealed weapon and possession of marijuana. The jury convicted her of all charges.

At issue in this appeal is whether defendant was subjected to "express questioning or its functional equivalent." See *Rhode Island v Innis*, 446 US 291, 300-301; 100 S Ct 1682, 64 L Ed 2d 297 (1980). Defendant contends that her initial statement about where she obtained the gun was obtained illegally and that subsequent statements that she made should be suppressed as fruit of the poisonous tree. The parties are in agreement that defendant was in custody at the time the statements were given.

"An appellate court must give deference to the trial court's findings at a suppression hearing." *People v Cheatham*, 453 Mich 1, 29; 551 NW2d 355 (1996). When reviewing the lower court's decision regarding suppression under *Miranda*, this Court engages in a de novo review of the entire record. *Id*. at 30. However, this Court will not disturb a trial court's factual findings unless they are clearly erroneous. *Id*.

In *Miranda*, 384 US at 478-479, the United States Supreme Court held that the prosecution may not use statements stemming from a custodial interrogation without first demonstrating the use of procedural safeguards sufficient to secure the defendant's privilege against self-incrimination. An "[i]nterrogation has been held to be a practice that police know is reasonably likely to invoke a response that the prosecution may seek to use at trial." *People v O'Brien*, 113 Mich App 183, 192; 317 NW2d 570 (1982). For purposes of *Miranda*, interrogation refers to express questioning or its functional equivalent, including "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 US at 300-301. "*Miranda* also precludes the prosecution from proving defendant's guilt with statements made by the defendant while in custody, prior to obtaining or effectively waiving assistance of counsel." *O'Brien*, 113 Mich App at 192.

However, "[s]tatements that are voluntered by a defendant need not be suppressed at trial, even if the volunteered remark was not preceded by *Miranda* warnings." *Id*. at 192-193. A

---

[1] *People v Walker*, 374 Mich 331; 132 NW2d 87 (1965).

police officer's question when prompted by a defendant's volunteered statement falls under this exception. *Id*. at 193.

In this case, Trooper Whited was in the patrol car with defendant checking the identities of suspects on LEIN. The trooper was not asking defendant questions or taking any actions to solicit a response from her. When defendant gratuitously stated to him that she did not know if she should say anything, Whited responded that cooperation would look good and that it is best to be truthful. Defendant then stated that she got the gun from the vehicle's other occupants. Whited immediately left the car to converse with Trooper Stickel, and defendant was read her rights.

It was defendant who first made a statement to Trooper Whited voluntarily and independently. Whited made no attempt to question or interrogate defendant, merely responding that cooperation would look good. Whited was not in the patrol car to speak to defendant, but to do a LEIN search. The record does not indicate that there was an attempt by this trooper to elicit information from defendant at this time or that he should have known that the situation would likely lead to an incriminating response from defendant. Defendant initiated the conversation with the trooper and the merit of defendant's claim heavily turns on this point; indeed, Trooper Whited was responding to a statement made by defendant. See, generally, *O'Brien*, 113 Mich App at 193. The circumstances indicate that in the absence of defendant's initial statement/question, Whited would have simply continued with his LEIN search; instead, he gave general information in response to defendant's statement. Further, the record shows that as soon as defendant began to make an additional statement Whited left the patrol car and subsequently *Mirandized* defendant. Defendant's statement about where she received the gun was volunteered and the trial court did not err in denying defendant's motion to suppress.

Regarding the subsequent statements made by defendant, these statements were made following a proper waiver by defendant. Because the initial statement was volunteered and does not merit suppression under *Miranda*, the exclusion of the subsequent statements as the fruit of the poisonous tree is unwarranted. *People v Raper*, 222 Mich App 475, 481; 563 NW2d 709 (1997).

Affirmed.

/s/ William B. Murphy
/s/ Patrick M. Meter
/s/ Deborah A. Servitto