COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

CARLTON CORDELL CANTRELL,

       Defendant-Appellant.

UNPUBLISHED
August 18, 2016

No. 326931
Wayne Circuit Court
LC No. 14-009390-FC

Before: BECKERING, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Defendant was convicted by a jury of armed robbery, MCL 750.529, and sentenced to 10 to 20 years' imprisonment. He appeals by right. We affirm defendant's conviction, but remand for a *Crosby*[1] proceeding pursuant to *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

## I. BASIC FACTS

The victim, Angela Coluccelli,[2] testified that she was sitting in her car withdrawing money from a drive-up ATM when three men approached her vehicle. One of the men came up to her driver's side window, another man was behind him, and a third was at the passenger window. Coluccelli explained that the man outside of her window was "[r]ight next to" her, only a few inches away. At trial, Coluccelli identified this man as defendant. Coluccelli testified that defendant said, "Give me everything," and she saw a gun, so she raised her hands while defendant reached into the vehicle and took her purse, cell phone, and cigarette case from her lap. A video recording of the incident was admitted into evidence and played for the jury.

After the incident, Redford Township Police Officer Todd Ricci responded to the scene and spoke with Coluccelli, who provided a description of the perpetrators. Redford Township Police Officer Paul Flaviani testified that he was checking the surrounding neighborhood when he saw two men matching Coluccelli's description. Flaviani got out of his patrol vehicle and

---

[1] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

[2] The victim's last name is spelled both "Colucelli" and "Coluccelli" throughout the lower court record. We adopt the latter spelling for purposes of this opinion.

-1-

told the men to show their hands, to which one of the robbery suspects complied, while the other "immediately took off running." Flaviani identified the man who stopped as Harold Whitfield, and a warrant was obtained to search Whitfield's residence. During the search, the police discovered a wallet, purse, two credit cards bearing Coluccelli's name, and a cell phone case, which matched the description of the items taken from Coluccelli during the robbery.

Meanwhile, Redford Township Police Officer Michael Cracchiolo heard Flaviani call out over the radio that he saw two men matching the description of the robbery suspects, but one of the men fled eastbound, which was in Cracchiolo's direction. Cracchiolo testified that, shortly after the call, he saw defendant run out from between two houses and into the street. Cracchiolo eventually apprehended defendant and transported him to Coluccelli's location a block and a half away, where Coluccelli positively identified him as the man who reached into her vehicle and stole her belongings.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, defendant first argues that his trial counsel provided ineffective assistance by failing to move to suppress Coluccelli's on-scene identification and by failing to present expert testimony regarding the inaccuracies of eyewitness testimony. A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). We review a trial court's factual findings for clear error and review constitutional questions de novo. *People v Dendel*, 481 Mich 114, 124; 748 NW2d 859 (2008). Defendant did not raise the issue of ineffective assistance of counsel in the trial court, and although he moved in this Court for a remand to hold an evidentiary hearing on his claim, this Court denied his request.[3] Therefore, our review is limited to mistakes apparent on the record. *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

To prevail on an ineffective assistance claim, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) absent counsel's deficient performance, there is a reasonable probability that the outcome of the case would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). "A defendant pressing an ineffective assistance claim must overcome a strong presumption that counsel's tactics constituted sound trial strategy." *People v Rodgers*, 248 Mich App 702, 715; 645 NW2d 294 (2001). We will not substitute our judgment for that of counsel regarding matters of trial strategy, and will not review counsel's performance with the benefit of hindsight. *Id.*

### A. ON-SCENE IDENTIFICATION

On-scene identifications "are reasonable, indeed indispensable, police practices because they permit the police to immediately decide whether there is a reasonable likelihood that the suspect is connected with the crime and subject to arrest, or merely an unfortunate victim of circumstance." *People v Winters*, 225 Mich App 718, 728; 571 NW2d 764 (1997). However, a

---

[3] *People v Cantrell*, unpublished order of the Court of Appeals, entered February 10, 2016 (Docket No. 326931).

pretrial identification procedure can deprive a defendant of due process if it "was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993). In evaluating the totality of the circumstances, courts should consider several factors, including

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." [*Id.* at 306 (citation and quotation marks omitted).]

Coluccelli testified that defendant was only inches away from her when he demanded her belongings and reached inside her vehicle to take them. She testified that she focused on defendant during the assault and purposefully attempted to memorize his facial features. After the fact, Coluccelli described defendant in detail to the police, who used her description to apprehend defendant as he fled. The on-scene identification was held approximately 30 minutes after the assault, and at the identification, Coluccelli said she was absolutely certain that defendant was the man who robbed her. She maintained this level of certainty at trial. Considering the totality of the circumstances, the on-scene identification procedure used in this case was not unduly suggestive. Trial counsel cannot be deemed ineffective for failing to raise a futile motion. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Accordingly, defendant cannot prevail on his ineffective assistance claim.

## B. EXPERT TESTIMONY

"Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). "A substantial defense is one that might have made a difference in the outcome of the trial." *Id.* We presume that counsel's decisions regarding what evidence to present and what witnesses to call are matters of trial strategy, which we will not second-guess. *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013).

In this case, the defense theory was that Coluccelli misidentified defendant. To support this theory, counsel cross-examined Coluccelli regarding the lighting conditions, the level of stress she experienced during the robbery, and the amount of time she had to observe the robber. Counsel paid particular attention to evidence regarding defendant's clothing at the time he was apprehended by police compared with the clothing of the assailant captured on the video, arguing that defendant could not have been the assailant because the clothing did not match.

Although presenting an expert on eyewitness testimony might have added to the argument that defendant was misidentified, the fact that counsel conceivably could have done more does not render her performance constitutionally deficient. *People v Blevins*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 315774); slip op at 4. Counsel's decision to rely on cross-examination to discredit the victim's identification and to point out discrepancies in defendant's clothing when he was detained versus the clothing of the assailant on the video constituted sound trial strategy. In deciding not to present an expert witness, counsel "may reasonably have been concerned that the jury would react negatively to perhaps lengthy expert

testimony that it may have regarded as only stating the obvious: memories and perceptions are sometimes inaccurate." *People v Cooper*, 236 Mich App 643, 658; 601 NW2d 409 (1999). Further, the trial court instructed the jury on how to judge the credibility of a witness, highlighting many of the factors that defendant argues render eyewitness testimony unreliable, e.g., stress, lighting, and duration of exposure to the suspect. In sum, defendant has not shown that his trial counsel's performance was objectively unreasonable under the circumstances.

### III. ADMISSIBILITY OF JAIL PHONE RECORDING

Defendant next argues that the trial court erred by admitting a recording of a jail phone call in which he purportedly stated, "[I]t is what it is, I made this choice, I did what I did, now I gotta sit down." Specifically, defendant argues that the recording lacked a proper foundation. We review preserved claims of evidentiary error, like the one presented here, for an abuse of discretion. *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003). "An abuse of discretion occurs . . . when the trial court chooses an outcome falling outside th[e] principled range of outcomes." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

"To lay a proper foundation for the admission of real evidence, the article must be identified as what it is purported to be and shown to be connected with the crime or with the accused, although such identification is not required to be absolute or certain." *People v O'Brien*, 113 Mich App 183, 204; 317 NW2d 570 (1982); see MRE 901(a). A witness can identify a voice "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." MRE 901(b)(5).

In this case, Wayne County Sheriff's Department Corporal Ki Sobol testified that he monitors and records all of the phone systems in the county jails. He explained that inmates can set up a phone account by using their inmate number and, usually, the last four digits of their social security number. An inmate can then make a phone call by entering the fourteen-digit number. Sobol testified that when he receives a request to obtain a jail phone recording, as he did in this case, he cross-references the inmate's name and date of birth with the inmate's social security number. Additionally, Redford Township Police Detective Kevin Crittenden testified that he is familiar with defendant's voice and that the voice on the call belonged to defendant.[4] Given this evidence, a proper foundation was laid and the trial court did not abuse its discretion by admitting the recording at trial.

### IV. SENTENCING

Finally, defendant raises several alleged sentencing errors. Defendant first argues that the trial court improperly assessed points under offense variables (OVs) 4 and 10. We review a trial court's factual determinations under the sentencing guidelines for clear error. *People v Hardy*,

---

[4] Although there is testimony that Crittenden only interviewed defendant once and had limited other interactions with him, identification used to establish a proper foundation "is not required to be absolute or certain." *O'Brien*, 113 Mich App at 204.

494 Mich 430, 438; 835 NW2d 340 (2013). Clear error exists if we are definitely and firmly convinced that a mistake has been made. *People v Rhodes*, 495 Mich 938, 938; 843 NW2d 214 (2014). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438. A trial court's factual determinations used to score the sentencing guidelines must be supported by a preponderance of the evidence. *Id.*

## A. OV 4

Offense variable 4 considers psychological injury to a victim. MCL 777.34(1). Defendant was assessed 10 points under this variable, which is appropriate if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). In assessing points under OV 4, the fact that the victim did not actually seek treatment is not conclusive. MCL 777.34(2).

At trial, Coluccelli testified that, during the robbery, she was terrified and feared for her life. She also testified that, after she fled to safety and called the police, she remained "[s]haken up, scared." At sentencing, the prosecutor argued that 10 points should be assessed under OV 4 because when Coluccelli testified, "you could see the fear that she still possesses."

In *People v Schrauben*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 323170); slip op at 7, this Court explained that a trial court's observations about a victim's demeanor during trial may support its factual findings. Although the prosecutor suggested that Coluccelli exhibited a fearful demeanor during trial, the trial court did not make any explicit findings or observations regarding her demeanor. In *People v Apgar*, 264 Mich App 321, 329; 690 NW2d 312 (2004), this Court concluded that a victim's testimony that "she was fearful during the encounter with defendant . . . was sufficient to support the trial court's decision to score OV 4 at ten points." However, the Court's review in *Apgar* was guided by an evidentiary standard substantially less rigid than the preponderance of the evidence standard.[5] In *Hardy*, 494 Mich at 438 n 18, our Supreme Court noted that "[s]everal recent Court of Appeals decisions have stated that 'scoring decisions for which there is any evidence in support will be upheld.' " (Citations omitted.) The Court clarified that "[t]he 'any evidence' standard does not govern review of a circuit court's factual findings for the purposes of assessing points under the sentencing guidelines," but rather, the preponderance of the evidence standard applies. *Id.*

Applicable cases since *Hardy* have upheld 10 point assessments under OV 4 on the basis of evidence that the victim suffered from psychological difficulties at some point after the crime

---

[5] The *Apgar* Court explained that it was reviewing the trial court's scoring decision to determine whether the evidence "adequately supports" the score. *Apgar*, 264 Mich App at 329. *Apgar* relied on *People v Hornsby*, 251 Mich App 462, 468; 650 NW2d 700 (2002), as support for this standard. *Hornsby* in turn cited to the following rule from *People v Elliott*, 215 Mich App 259, 260; 544 NW2d 748 (1996): "Scoring decisions for which there is any evidence in support will be upheld."

occurred. See, e.g., *People v Bosca*, 310 Mich App 1, 51; 871 NW2d 307, lv held in abeyance ___ Mich ___; 872 NW2d 492 (2015); *People v Armstrong*, 305 Mich App 230, 247-248; 851 NW2d 856 (2014). In contrast, this Court has reversed a trial court's assessment of 10 points for OV 4 when the only evidence regarding the victim's psychological state indicated that she appeared "visibly shaken" at the scene immediately following the crime. *People v McChester*, 310 Mich App 354, 356, 358-359; 873 NW2d 646 (2015). In this case, there is no evidence regarding the victim's psychological state beyond her initial fearfulness during and immediately after the crime. Given this scarcity of evidence, we conclude that the assessment of 10 points for serious psychological injury was not supported by a preponderance of the evidence.

## B. OV 10

Offense variable 10 considers the exploitation of a vulnerable victim, and 15 points may be assessed if "[p]redatory conduct was involved." MCL 777.40(1)(a). Predatory conduct encompasses "those forms of 'preoffense conduct' that are commonly understood as being 'predatory' in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct or 'preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection.' " *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011), quoting *People v Cannon*, 481 Mich 152, 162; 749 NW2d 257 (2008). Points should be assessed "only when it is readily apparent that a victim was 'vulnerable,' i.e., was susceptible to injury, physical restraint, persuasion, or temptation." *Cannon*, 481 Mich at 158. A victim's vulnerability may arise out of the circumstances of the crime and can be created or enhanced by the defendant's own predatory conduct. *Huston*, 489 Mich at 464, 467-468.

In this case, defendant and his accomplices approached the victim as a group while it was dark outside and surrounded her vehicle from both sides while she was withdrawing cash from a drive-up ATM. The victim testified that she did not see the men until they were at her windows, indicating that they were lying in wait and hidden from view. By lying in wait when it was dark outside, waiting until the victim stopped her vehicle and began withdrawing money from the ATM, and then surrounding her vehicle as a group, defendant's conduct made the victim more susceptible to injury and restraint and he exploited her vulnerability. See *Huston*, 489 Mich at 466-467. Therefore, the trial court did not err by assessing 15 points for OV 10.

Although the trial court erroneously assessed 10 points for OV 4, deducting those 10 points from defendant's total OV score does not alter his guidelines minimum sentence range. "Where a scoring error does not alter the appropriate guidelines range, resentencing is not required." *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006). Accordingly, defendant is not entitled to resentencing on this basis.

## C. JUDICIAL FACT-FINDING

Defendant also argues that his guidelines minimum sentence range was constrained by improper judicial fact-finding. Specifically, he argues that the trial court assessed points under OVs 1, 4, 9, 10, and 19 that were not based on facts found by the jury beyond a reasonable doubt or admitted by defendant. In *Lockridge*, 498 Mich at 364, our Supreme Court concluded that Michigan's sentencing guidelines were constitutionally deficient to the extent that judicial fact-finding could be used to increase a defendant's guidelines minimum sentence range. As a result,

the Court severed MCL 769.34(2)[6] to the extent that it was mandatory and struck down the requirement that courts must articulate substantial and compelling reasons to depart from the guidelines. *Id.* at 391. Accordingly,

> [w]hen a defendant's sentence is calculated using a guidelines minimum sentence range in which OVs have been scored on the basis of facts not admitted by the defendant or found beyond a reasonable doubt by the jury, the sentencing court may exercise its discretion to depart from that guidelines range without articulating substantial and compelling reasons for doing so. A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness. Resentencing will be required when a sentence is determined to be unreasonable. Because sentencing courts will hereafter not be *bound* by the applicable sentencing guidelines range, this remedy cures the Sixth Amendment flaw in our guidelines scheme by removing the unconstitutional constraint on the court's discretion. Sentencing courts must, however, continue to consult the applicable guidelines range and take it into account when imposing a sentence. Further, sentencing courts must justify the sentence imposed in order to facilitate appellate review. [*Id.* at 391-392 (citations omitted).]

The *Lockridge* Court concluded that a remand to the trial court is appropriate for "all defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure." *Id.* at 395. In such cases, the procedure outlined in *Crosby*, 397 F3d 103, must be followed to determine whether the sentencing court "would have imposed a materially different sentence but for the constitutional error." *Id.* at 397.

In this case, a jury found defendant guilty of armed robbery, MCL 750.529. "The essential elements of an armed robbery are (1) an assault, and (2) a felonious taking of property from the victim's person or presence, while (3) the defendant is armed with a weapon described in the statute." *People v Allen*, 201 Mich App 98, 100; 505 NW2d 869 (1993). Under MCL 750.529, the offender must "posses[] a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon" or represent "orally or otherwise that he or she is in possession of a dangerous weapon."

The trial court assessed 15 points for OV 1, which requires that a "firearm was pointed at or toward a victim or the victim had a reasonable apprehension of an immediate battery when

---

[6] The relevant statutory language states the following:

> Except as otherwise provided in this subsection or for a departure from the appropriate minimum sentence range provided for under subsection (3), the minimum sentence imposed by a court of this state for a felony enumerated in part 2 of chapter XVII committed on or after January 1, 1999 shall be within the appropriate sentence range under the version of those sentencing guidelines in effect on the date the crime was committed.

threatened with a knife or other cutting or stabbing weapon." MCL 777.31(1)(c). The elements of armed robbery do not require that a firearm be pointed at a victim, nor do they require that the offender possess a weapon at all. MCL 750.529. Because this fact is not inherent in the jury's verdict, the assessment of 15 points under OV 1 was based on judicial fact-finding.[7]

Regarding the other OVs, 10 points may be assessed under OV 4 if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). Ten points may be assessed under OV 9 if there "were 2 to 9 victims who were placed in danger of physical injury or death." MCL 777.39(1)(c). Fifteen points may be assessed under OV 10 if "predatory conduct was involved." MCL 777.40(1)(a). Finally, 10 points may be assessed under OV 19 if the offender "interfered with or attempted to interfere with the administration of justice." MCL 777.49(c).

These facts are not inherently present in the elements of armed robbery and the jury's verdict, so the trial court relied on judicial fact-finding to assess the points. The points from the challenged OVs increased defendant's guidelines minimum sentence range from 42 to 70 months to 108 to 180 months. See MCL 777.62. Accordingly, defendant's minimum sentence range was established in a manner that violated the Sixth Amendment. Defendant's sentence was also not subject to an upward departure. Therefore, he is entitled to a *Crosby* remand. *Lockridge*, 498 Mich at 395, 397. On remand, the trial court should determine whether it would have imposed a materially different sentence but for the constitutional error and, if so, resentence defendant.[8] *Id.* at 397. Before engaging in that inquiry, the court "should first allow [defendant] an opportunity to inform the court that [he] will not seek resentencing." *Id.* at 398.

---

[7] OV 1 also allows an assessment of five points if a "weapon was displayed or implied," MCL 777.31(1)(e), but those points may not be imposed if the offender was convicted of armed robbery, MCL 777.31(2)(e).

[8] Although defendant moved for resentencing pursuant to *Lockridge* while this appeal was pending, the trial court did not follow the correct *Crosby* procedure. Rather, the trial court merely reiterated its reasons for assessing points under each OV and stated that, in doing so, it is appropriate to use facts adduced during trial. Indeed, sentencing courts must still consider the guidelines even with judicial fact-finding. *Lockridge*, 498 Mich at 391-392. But here, the trial court made no findings regarding whether it would have imposed a materially different sentence if it had been aware that the guidelines were advisory only. Therefore, defendant has not yet been afforded the relief outlined in *Lockridge*.

Defendant's conviction is affirmed, but the case is remanded for a *Crosby* proceeding. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola